<table>
<tr><td>1</td><td>GARY J. LORCH (SBN: 119989)<br>GORDON & REES LLP</td></tr>
</table>

1  GARY J. LORCH (SBN: 119989)
   GORDON & REES LLP
2  633 West Fifth Street, Suite 4900
   Los Angeles, CA 90071
3  Telephone: (213) 576-5000
   Facsimile: (213) 680-4470
4
   Attorneys for Defendant
5  AKAL SECURITY, INC.

6

7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11
   DAVID LOERA, for himself and on        )  CASE NO.
12 behalf of all others similarly situated and )
   the general public,                     )
13                                          )  '08 CV 0094 DMS AJB
                          Plaintiffs,       )  NOTICE OF REMOVAL OF
14                                          )  ACTION UNDER 28 U.S.C. §
                   v.                       )  1441(b) FEDERAL QUESTION
15                                          )
   AKAL SECURITY, INC., a corporation;      )
16 and DOES 1-100, inclusive,               )
                                            )
17                        Defendants.       )
                                            )
18                                          )
                                            )
19                                          )
                                            )
20 _____)

21 **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

22      PLEASE TAKE NOTICE that defendant AKAL SECURITY, INC. ("Akal")

23 hereby removes to this court the state court action described below.

24      1.      Pursuant to Local Rule 8-1, this identifies the statutory bases for

25 federal jurisdiction. This Court has original jurisdiction under 28 U.S.C. § 1331.

26 The applicable federal statute is the Labor Management Relations Act (29 U.S.C.

27 §185) ("LMRA") in that this is a suit for an alleged violation of a contract between

28

Gordon & Rees LLP<br>633 West Fifth Street<br>Suite 4900<br>Los Angeles, CA 90071

FILED
2008 JAN 16 AM 11:00
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ KNK _____DEPUTY

1  an employer and a member of a labor organization.  A copy of the Summons and

2  Complaint, as well as the operative Second Amended Complaint filed in this action

3  in Imperial County Superior Court is attached.

4      2.      This civil action is one which may be removed to this Court by

5  defendant Akal Security, Inc. ("Akal") pursuant to the provisions of 28 U.S.C.

6  §1441(b) as it presents a federal question.

7      3.      On April 27, 2006, the subject action was filed in the Superior Court

8  of the State of California in and for the County of Imperial, entitled *David Loera,*

9  *et al. v. Akal Security, Inc. et al.*, as Case Number ECU03022, "Class Action

10  Complaint for Damages," in which Plaintiff alleged Causes of Action for Failure to

11  Pay Meal Break Premium Pay, Failure to Pay Rest Break Premium Pay, Violations

12  of The UCL, and Penalties Under California Labor Code Section 2699.  True and

13  correct copies of the Summons and Complaint, Civil Case Cover Sheet, and ADR

14  packet are attached hereto as Exhibit "A" and are incorporated herein by this

15  reference.

16      4.      On December 18, 2007 Plaintiff's Second Amended Complaint was

17  deemed filed and served.  Plaintiff's Second Amended Complaint, for the first time

18  alleged Causes of Action for Failure to Pay Overtime and related Waiting-Time

19  Penalties.  A true and correct copy of Plaintiff's Second Amended Complaint is

20  attached hereto as Exhibit "B" and is incorporated herein by this reference.

21      5.      This Notice for Removal is timely filed.  Service of Plaintiff's Second

22  Amended Complaint was effectuated on Defendant Akal Security, Inc., pursuant to

23  California Code of Civil Procedure section 471.5(a), on December 18, 2007.

24  Defendant Akal was therefore in receipt of the Summons and Complaint on that

25  date.  *Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354, 119

26  S.Ct. 1322, 1399 (1999).

27      6.      Venue is proper in this Court.  A civil action arises in the county in

28  which a substantial part of the events or omissions which give rise to the claim

*Gordon & Rees LLP*
*633 West Fifth Street*
*Suite 4900*
*Los Angeles, CA 90071*

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)

occurred.  This Notice of Removal is being filed in the division of U.S. District Court for the Southern District of California located in the County of San Diego, as the Southern District of California embraces the County where the state court action was pending, *i.e.*, Imperial County.

7.    This Court has original subject matter jurisdiction over the instant action pursuant to the LMRA, which  preempts and displaces any state law claim that is (1) based directly on rights created by a collective bargaining agreement, or (2) substantially dependent on an interpretation of a collective bargaining agreement. *See* 29 U.S.C. § 185.  Plaintiff's Third and Fourth Causes of Action allege claims for Failure to Pay Overtime Premium Pay and Waiting-Time Penalties Under Labor Code Section 203.  Adjudication of these causes of action requires interpretation of the Collective Bargaining Agreement ("CBA") between Akal Security, Inc., and the Security, Police, and Fire Professionals of America – Amalgamated Local #165, which is attached hereto as Exhibit "C" and are incorporated herein by this reference.

8.    The CBA states that the grievance procedure set forth in the agreement is the means for the resolution of worker's and Union grievances or claims against the employer. Article 5 of the Agreement defines a "grievance" as "a claimed violation, misinterpretation, or misapplication of any provision of this Agreement, or the challenge of any disciplinary action taken against a Union Employee . . ."  See Article 5.1 of exhibit "1" to Exhibit "C" of this Notice of Removal.

9.    In addition, to the Summons, Complaint Notice of Case Assignment and ADR packet which are attached hereto as Exhibit "A", true and correct copies of the remainder of the Imperial County Superior Court file comprising of: Plaintiff David Loera's First Amended Complaint; Defendant Akal Security, Inc.'s Answer to Plaintiff's First Amended Complaint; Notice of Plaintiff David Loera's Motion to Compel; Declaration of Bernard F. King III In Support of Plaintiff

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)

1 | David Loera's Motion to Compel; Memorandum of Points and Authorities in
2 | Support of Plaintiff David Loera's Motion to Compel; Separate Statement in
3 | Support of Plaintiff David Loera's Motion to Compel; Defendant Akal Security
4 | Inc.'s Separate Statement In Opposition to Plaintiff David Loera's Motion to
5 | Compel; Plaintiff David Loera's Reply in Support of Motion to Compel, Notice of
6 | Motion and Motion of Defendant Akal Security; Inc. For Summary Judgment, or,
7 | in the Alternative Summary Adjudication; Declaration of Joshua Wagner is
8 | Support of Defendant Akal Security, Inc.'s Motion for Summary Judgment, or, in
9 | the alternative, Summary Adjudication; Declaration of John Agle in Support of
10 | Defendant Akal Security Inc.'s Motion for Summary Judgment, or, in the
11 | Alternative, Summary Adjudication; Declaration of Victor Araiza in Support of
12 | Defendant Akal Security, Inc.'s Motion of Summary Judgment, or, in the
13 | Alternative, Summary Adjudication; Memorandum of points and Authorities in
14 | Support of Defendant Akal Security, Inc.'s Motion for Summary Judgment, or, in
15 | the Alternative, Summary Adjudication; Separate Statement of Undisputed
16 | Material Facts in Support of Motion of Defendant Akal Security, Inc. for Summary
17 | Judgment, or, in the Alternative, Summary Adjudication; Plaintiff David Loera's
18 | Notice of Motion and Motion for Leave to File a Second Amended Complaint;
19 | Memorandum in Support of Plaintiff David Loera's Motion for Leave to File a
20 | Second Amended Complaint; Declaration of Bernard F. King III in Support of
21 | Plaintiff David Loera's Motion for Leave to File a Second Amended Complaint;
22 | Defendant Akal Security, Inc.'s Opposition to Plaintiff David Loera's Motion for
23 | Leave to File a Second Amended Complaint; Reply to Defendant Akal Security
24 | Inc.'s Opposition to Plaintiff's Motion for Leave to File a Second Amended
25 | Complaint; and Declaration of Bernard F. King III In Support of Reply to
26 | Defendant Akal Security Inc.'s Opposition to Plaintiff's Motion for Leave to File a
27 | Second Amended Complaint is attached hereto as Exhibit "D".
28 |     10.    A copy of this Notice of Removal, including exhibits, is being filed

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)

1  with the Clerk of the Superior Court of the State of California in and for the
2  County of Imperial.

3      11.    A copy of this Notice of Removal, including exhibits, is being served
4  on counsel for Plaintiff.

5

6  Dated: January 14, 2008                         GORDON & REES LLP

7

8                                                  By: _____
9                                                      Gary J. Lorch
                                                       Attorneys for Defendant
10                                                     AKAL SECURITY, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

*LOERA v. AKAL SECURITY, INC.*
*CASE NO.*

# TABLE OF CONTENTS

| EXHIBIT | DESCRIPTION | PAGE |
|---------|-------------|------|
| A | Summons and Complaint, Civil Case Cover Sheet, and ADR packet | 1 |
| B | Second Amended Complaint | 17 |
| C | Collective Bargaining Agreement ("CBA") between Akal Security, Inc., and the Security, Police, and Fire Professionals of America – Amalgamated Local #165 | 33 |
| D | Remainder of the Imperial County Superior Court file for Case Number ECU03022 | 64 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GORDON & REES LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

AKAL/1039887/5308076

EXHIBIT A

JASON R. THORNTON, SBN 185837
STEPHEN J. SCHULTZ, SBN 90187
BERNARD F. KING III, SBN 232518

**MARKS, GOLIA & FINCH, LLP**
ATTORNEYS AT LAW
3900 HARNEY STREET – FIRST FLOOR
SAN DIEGO, CALIFORNIA 92110-2825
TELEPHONE: (619) 293-7000
FACSIMILE: (619) 293-7362

MATTHEW B. BUTLER, SBN 201781
**NICHOLAS & BUTLER, LLP**
225 BROADWAY, 19TH FLOOR
SAN DIEGO, CALIFORNIA 92101-5005
TELEPHONE: (619) 325-0492
FACSIMILE: (619) 325-0496

Assigned for all purpose to Judge
including trial
CHRISTOPHER W. YEAGER

Attorneys for Plaintiff David Lorera

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF IMPERIAL

| | |
|---|---|
| DAVID LORERA, for himself and on behalf of all other similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>AKAL SECURITY, INC., a corporation; And DOES 1-100, inclusive,<br><br>        Defendants. | CASE NO: *ECUO 3022*<br><br>CLASS ACTION<br><br>COMPLAINT FOR:<br><br>(1)   FAILURE TO PAY MEAL PERIOD PREMIUM PAY;<br>(2)   FAILURE TO PAY REST BREAK PREMIUM PAY;<br>(3)   VIOLATIONS OF THE UCL; AND<br>(4)   PENALTIES UNDER CALIFORNIA LABOR CODE SECTION 2699<br><br>Assigned to:<br>Hon. _____, Dept. _____ |

/ / / / /

/ / / / /

/ / / / /

/ / / / /

COMPLAINT

2 A

# SUMMONS
## (CITA    N JUDICIAL)

**SUM-100**

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AKAL SECURITY, INC., a corporation; and DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DAVID LORERA, for himself and on behalf of all other similarly situated,

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California County of Imperial
939 W. Main Street
El Centro, California  92243-2842
County Courthouse

CASE NUMBER:
*(Número del Caso):*
ECU103022

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JASON R. THORNTON, SBN 185637        (619) 293-7000  (619) 293-7362
MARKS, GOLIA & FINCH, LLP
3900 Harney Street, First Floor
San Diego, CA  92110-2825

DATE: APR 2 7 2006     JOSE O. GUILLE Clerk, by _____, Deputy
*(Fecha)*                *(Secretario)*                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* AKaL Security, Inc. a corporation

   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 6/20/06

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

1A

## INTRODUCTION

The public policy of California declares:

It is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of [workers] compensation, and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

(Labor Code, § 90.5 subd. (a).)

Despite this clear mandate, this case involves blatant, egregious and flagrant violations of the California Labor Code and the Industrial Welfare Commission ("IWC") Wage Orders by the defendant.

## GENERAL ALLEGATIONS

1.    Venue is proper in this court because the events and contracts described below occurred and were executed exclusively within this judicial district.

2.    Plaintiff David Lorera ("Plaintiff") is, and at all times mentioned was, an individual residing and working in the State of California.

3.    Plaintiff is informed and believes defendant Akal Security, Inc. ("Akal") is, and at all times mentioned was, a corporation organized and existing under and by virtue of the laws of the State of Texas, and doing business in the County of Imperial, State of California.

4.    Plaintiff does not know the true names and capacities of defendants sued as DOES 1 through 100, inclusive, and therefore sue them by fictitious names. Plaintiff is informed and believes DOES 1 through 100, inclusive, are in some way responsible for the events and Plaintiff's damages described in this complaint. Plaintiff will seek leave to amend this complaint when the true names and capacities of these defendants have been ascertained.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

2

COMPLAINT

3A

<u>JURISDICTION</u>

5.    This Court has jurisdiction over this action for damages, restitution, injunctive relief and penalties pursuant to, among other provisions, California Labor Code sections 226.7 and 512, and sections 17203 and 17205 of the UCL (California Business & Professions Code sections 17203 and 17205).

<u>CLASS ALLEGATIONS</u>

6.    Plaintiff's causes of action are brought and may properly be maintained as a class action pursuant to the provisions of California Code of Civil Procedure section 382. Plaintiff brings this action on behalf of himself and all members of the Class ("the Class"). The Class that Plaintiff represents is defined as follows:  all current and former prison guards who worked for Akal, at the Department of Homeland Security Immigration Detention Center in Imperial County, during the period April 15, 2002 to the present (the "Class Period"). Plaintiff brings no claims under federal law.  On information and belief, more than two-thirds (2/3) of the Class members are, when this action was filed and continuing to date, residents of the state of California, and, at the very least, more than one-third (1/3) of the Class members are residents of the State of California.

7.    The members of the Class for whose benefit the action is brought are so numerous that joinder of all Class members is impracticable.  Plaintiff believes that there are over a thousand members of the Class, although the exact number of individual Class members is presently unknown, and can only be ascertained through appropriate discovery.  The identities of all Class members can be readily ascertained by reference to Akal's records.

8.    There are questions of fact and law common to the Class that predominate over any questions affecting only individual Class members.

9.    Among the questions of fact common to the Class are the following:

a.    whether Class members were compelled to work for periods of five or more consecutive hours without having at least a one half hour break for meals and without receiving the required premium pay;

3

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

COMPLAINT

4A

b.    whether Class members were compelled to work for periods of four or
more consecutive hours without having at least a one ten minute rest
period and without receiving the required premium pay;

c.    whether Akal has failed to keep proper records for the Class members
working hours;

10.    Plaintiff's claims are typical of the claims of Class members, because Plaintiff
and each member of the Class worked for Akal without being provided with the required meal
periods and rest breaks as mandated by California law, and were subjected uniformly to other
unlawful conduct by Akal.

11.    Plaintiff is committed to the vigorous prosecution of this action. Plaintiff has no
unique claims, has no conflict of interest with other Class members and has retained competent
counsel experienced in the prosecution of Class actions. Accordingly, Plaintiff is an adequate
representative of the Class and will fairly and adequately protect the interests of the Class.

12.    A Class action is superior to other available methods for the fair and efficient
adjudication of the controversy. In light of the amount of damage suffered by individual Class
members, individual actions by Class members are impracticable and a Class action is the only
practicable method by which the Class members can achieve redress from Akal and prevent
Akal from retaining millions of dollars of its ill-gotten gains. Individual actions would present
a risk of inconsistent adjudications, even though each Class member has an effectively
identical claim of right against Akal. Because the Class claims can be proven almost entirely
through Akal's own documents and witnesses, this case entails no circumstances which will
make it difficult to manage as a Class action. Individual damages may be calculated from the
information maintained in Akal's records, so that the cost of administering any recovery can be
minimized.

13.    This action may also be maintained as a class action because:

a.    the prosecution of separate actions by or against individual members of
the class would create a risk of:

4

MARKS, GOLIA &
FINCH LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

COMPLAINT

5A

 

      i.    inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

      ii.   adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

   b.   the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

14. Plaintiff and Class members work or have worked as prison guards for Akal during the Class Period, at the Department of Homeland Security Immigration Detention Center in El Centro, California.

15. During the past four years, Plaintiff and Class members were required by Akal to work for continuous periods of five hours or greater without having at least a one-half hour meal break. Despite having denied Plaintiff and Class members of these meal breaks, Akal failed to compensate the Plaintiff and Class members with the requisite premium pay as set forth in the California Labor Code.

16. During the past four years, Plaintiff and Class members were required by Akal to work for continuous periods of four hours or greater without having at least a ten minute rest period. Despite having denied Plaintiff and Class members of these rest periods, Akal failed to compensate the Plaintiff and Class members with the requisite premium pay as set forth in the California Labor Code.

/ / / / /

/ / / / /

5

COMPLAINT

1    17.    During the past four years, Plaintiff is informed and believes Akal failed to

2  provide Plaintiff and Class members with accurate wage deduction statements showing the

3  actual hours worked by Plaintiff and Class members.

FIRST CAUSE OF ACTION

(Failure to Pay Meal Period Premium Pay –
On behalf of Plaintiff and Class Members Against Akal and DOES 1 through 100)

7    18.    Plaintiff incorporates by reference each and every allegation contained in

8  Paragraphs 1 through 17 above.

9    19.    California law requires an employer to pay an additional one hour of

10  compensation for each meal period the employer fails to provide. Employees are entitled to an

11  uninterrupted meal period, during which employees are relieved of all duties, of at least thirty

12  minutes for each five-hour work period. Plaintiff and Class members consistently worked over

13  five hours in a workday without a meal period.

14    20.    Defendant failed to provide plaintiff and Class members with timely meal

15  breaks of not less than thirty minutes for each five-hour period worked as required by

16  California law.

17    21.    Plaintiff and Class members are entitled to recover an amount equal to one hour

18  of wages per missed meal break, interest, applicable penalties, attorneys' fees and costs.

SECOND CAUSE OF ACTION

(Failure to Pay Rest Break Premium Pay –
On behalf of Plaintiff and Class Members Against Akal and DOES 1 through 100)

22    22.    Plaintiff incorporates by reference each and every allegation contained in

23  Paragraphs 1 through 21 above.

24    23.    California law requires an employer to pay an additional one hour of

25  compensation for each rest period the employer fails to provide. Employees are entitled to a

26  paid ten minute rest break for every four hour period worked. Plaintiff and Class members

27  consistently worked over four hour periods per day with no rest breaks.

28

6

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

COMPLAINT

7 A

31.     If an injunction does not issue enjoining Akal from engaging in the unlawful

business practices described above, Plaintiff and Class Members and the general public will be

irreparably injured, the exact extent, nature and amount of such injury being impossible to

ascertain.

32.     Plaintiffs have no plain, speedy, and adequate remedy at law.

33.     Akal, if not enjoined by this Court, will continue to engage in the unlawful

business practices described above in violation of the UCL, in derogation of the rights of

Plaintiff and Class Members and of the general public.

34.     Plaintiff's success in this action will result in the enforcement of important

rights affecting the public interest by conferring a significant benefit upon the general public.

35.     Private enforcement of these rights is necessary as no public agency has pursued

their enforcement. There is a financial burden incurred in pursuing this action, and it would be

against the interests of justice to require the payment of attorneys' fees from any recovery in

this action.

36.     Plaintiff and Class members are therefore entitled to an award of attorneys' fees

and costs of suit pursuant to California Code of Civil Procedure section 1021.5.

## FOURTH CAUSE OF ACTION

(Penalties Under California Labor Code Section 2699 – On behalf of Plaintiff and Class
Members Against Akal and DOES 1 through 100)

37.     Plaintiff incorporates each and every allegation contained in Paragraphs 1

through 36 above.

38.     On April 7, 2006, counsel for Plaintiff sent letters to the California Labor and

Workforce Development Agency and Akal pursuant to California Labor Code section 2699.3.

Counsel for Plaintiff is awaiting written notice from the California Labor and Workforce

Development Agency regarding whether it will investigate the violations set forth in the April

7, 2006 letter. Pursuant to California Labor Code section 2699.3(a)(2)(C), Plaintiff will amend

this complaint to add a cause of action for penalties under California Labor Code section 2699

8

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

COMPLAINT

8 A

1    because of Akal's violation of numerous provisions of the California Labor Code.

2        39.    Pursuant to California Labor Code section 2699, Plaintiff is entitled to be

3    awarded twenty-five (25 %) percent of all penalties due under California law, in addition to

4    interest, attorneys' fees and costs.

5        40.    The Court should award seventy-five (75 %) percent of the penalties due under

6    California law to the State of California.

7                                      PRAYER

8        WHEREFORE, Plaintiff and the Class members pray for judgment against Akal, as

9    follows:

10   FOR THE FIRST CAUSE OF ACTION:

11       1.    For an order certifying the case and appointing Plaintiff and his

12             counsel to represent the Class;

13       2.    For compensatory damages according to proof;

14       3.    For enhanced damages and penalties as permitted under

15             California law;

16       4.    For pre-judgment interest;

17       5.    For costs of suit; and

18       6.    For reasonable attorneys' fees.

19   FOR THE SECOND CAUSE OF ACTION:

20       1.    For an order certifying the Class and appointing Plaintiff and his counsel to

21             represent the Class;

22       2.    For compensatory damages according to proof;

23       3.    For enhanced damages and penalties as permitted under California law;

24       4.    For pre-judgment interest;

25       5.    For costs of suit; and

26       6.    For reasonable attorneys' fees.

27   / / / / /

28                                         9

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

COMPLAINT

9 A

FOR THE THIRD CAUSE OF ACTION:

    1.    For an order certifying the Class and appointing plaintiffs and their counsel to represent the Class;

    2.    For disgorgement of all monies which Akal has illegally gained;

    3.    For restitution according to proof at trial;

    4.    For an order enjoining Akal from any further acts and practices which violate the UCL; and

    5.    For attorneys' fees and costs.

FOR THE FOURTH CAUSE OF ACTION:

    1.    For penalties as permitted under California law;

    2.    For prejudgment interest;

    3.    For costs of suit; and

    4.    For reasonable attorneys' fees.

ON ALL CAUSES OF ACTION:

    1.    For reasonable attorneys' fees;

    2.    For costs of suit incurred herein;

    3.    For such other and further relief as this Court may deem just and proper; and

    4.    For interest on all monies due.

DATED: April 26, 2006             Respectfully submitted,

                              MARKS, GOLIA & FINCH, LLP

                              By:_____

                                JASON R. THORNTON
                                STEPHEN J. SCHULTZ
                                BERNARD F. KING III
                                Attorneys for Plaintiff David Lorera

974.002/BK339.am

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 283-7000

COMPLAINT

# Alternative Dispute Resolution

## Options for Resolving Your Dispute



11 A

# Alternative Dispute Resolution

## There Are Alternatives to Going to Trial

Did you know that 95 percent of all civil cases filed in court are resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach agreement.

## Advantages of ADR

Here are some potential advantages of using ADR:

- **Save Time:** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

- **Save Money:** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, and experts' fees.

- **Increase Control Over the Process and the Outcome:** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

- **Preserve Relationships:** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

- **Increase Satisfaction:** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the

1

12-A

parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

◘ **Improve Attorney-Client Relationships:** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

Because of these potential advantages, it is worth considering using ADR early in a lawsuit or even before you file a lawsuit.

## What Are the ADR Options?

The most commonly used ADR processes are mediation, arbitration, neutral evaluation, and settlement conferences.

### ♦ *Mediation*

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate:** Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use.

Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate:** Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

2

13 A

### ◆ *Arbitration*

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed.

Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate:** Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate:** If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

### ◆ *Neutral Evaluation*

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

3

14 A

**Cases for Which Neutral Evaluation May Be Appropriate:**
Neutral evaluation may be most appropriate in cases in which there are
technical issues that require special expertise to resolve or the only
significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate:**
Neutral evaluation may not be appropriate when there are significant
personal or emotional barriers to resolving the dispute.

♦ *Settlement Conference*

Settlement conferences may be either mandatory or voluntary. In both
types of settlement conferences, the parties and their attorneys meet with
a judge or a neutral person called a "settlement officer" to discuss
possible settlement of their dispute. The judge or settlement officer does
not make a decision in the case but assists the parties in evaluating the
strengths and weaknesses of the case and in negotiating a settlement.
Settlement conferences are appropriate in any case where settlement is
an option. Mandatory settlement conferences are often held close to the
date a case is set for trial.

4

15A

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):
Jason R. Thornton, SI .85637
Stephen J. Schultz, Sbn 90187
MARKS, GOLIA & FINCH, LLP
3900 Harney Street, First Floor
San Diego, CA 92110-2825
TELEPHONE NO.: (619) 293-7000   FAX NO.: (619) 293-7362
ATTORNEY FOR (Name): David Lorera

FOR COURT USE ONLY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Imperial
STREET ADDRESS: 939 W. Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: El Centro, California 92243-2842
BRANCH NAME: County Courthouse

**CASE NAME:** David Lorera v. Akal Security, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: ECUO 2022 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | JUDGE: CHRISTOPHER W. YEAGER  DEPT.: |

*Items 1-5 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800-1812 )**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

**2.** This case [X] is [ ] is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [X] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

**3.** Type of remedies sought (check all that apply):
a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

**4.** Number of causes of action (specify): 4

**5.** This case [X] is [ ] is not a class action suit.

**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015).
Date: April 26, 2006
Bernard F. King III, 232518
_____        ▶        _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et.seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**


Legal Solutions Plus

Cal. Rules of Court, rules 201.8, 1800-1812;
Standards of Judicial Administration, § 19

16A

JASON R. THORNTON, SBN 185637
BERNARD F. KING III, SBN 232518

**MARKS, GOLIA & FINCH, LLP**

ATTORNEYS AT LAW
3900 HARNEY STREET – FIRST FLOOR
SAN DIEGO, CALIFORNIA 92110-2825
TELEPHONE: (619) 293-7000
FACSIMILE: (619) 293-7362


MATTHEW B. BUTLER, SBN 201781

**NICHOLAS & BUTLER, LLP**

225 BROADWAY, 19TH FLOOR
SAN DIEGO, CALIFORNIA 92101-5005
TELEPHONE: (619) 325-0492
FACSIMILE: (619) 325-0496


Attorneys for Plaintiffs David Loera, Paul Sonico, Luis Martinez, Leo Cuen, Sean Acuna, Albert Rubio, James Barker, Andrew Stanfield and Guillermo Fernandez

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF IMPERIAL

| | |
|---|---|
| DAVID LOERA, PAUL SONICO, LUIS MARTINEZ, LEO CUEN, SEAN ACUNA, ALBERT RUBIO, JAMES BARKER, ANDREW STANFIELD, GUILLERMO FERNANDEZ  for themselves and on behalf of all others similarly situated and the general public,<br><br><br>Plaintiffs,<br><br>v.<br><br>AKAL SECURITY, INC., a corporation; And DOES 1-100, inclusive,<br><br>Defendants. | CASE NO:  ECU03022<br><br>[PROPOSED] SECOND AMENDED COMPLAINT FOR:<br><br>(1)    FAILURE TO PAY MEAL PERIOD PREMIUM PAY;<br>(2)    FAILURE TO PAY REST BREAK PREMIUM PAY;<br>(3)    FAILURE TO PAY OVERTIME PREMIUM PAY;<br>(4)    WAITING-TIME PENALTIES UNDER LABOR CODE SECTION 203;<br>(5)    VIOLATIONS OF THE UCL; AND<br>(6)    PENALTIES UNDER CALIFORNIA LABOR CODE SECTION 2699<br><br>[PLAINTIFF DEMANDS TRIAL BY JURY]<br><br>Assigned to:<br>Hon. Christopher W. Yeager, Dept. 1<br><br>Complaint Filed:    April 27, 2006<br>Trial Date:    Not Set |

[PROPOSED] SECOND AMENDED COMPLAINT

17 B

I

## INTRODUCTION

The public policy of California declares:

It is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of [workers] compensation, and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

(Labor Code, § 90.5 subd. (a).)

Despite this clear mandate, this case involves blatant, egregious and flagrant violations of the California Labor Code and the Industrial Welfare Commission ("IWC") Wage Orders by the defendant.

II

## GENERAL ALLEGATIONS

1.      Venue is proper in this court because the events and contracts described below occurred and were executed exclusively within this judicial district.

2.      Plaintiff David Loera is, and at all times mentioned was, an individual residing and working in the State of California.

3.      Plaintiff Paul Sonico is, and at all times mentioned was, an individual residing and working in the State of California.

4.      Plaintiff Luis Martinez is, and at all times mentioned was, an individual residing and working in the State of California.

5.      Plaintiff Leo Cuen is, and at all times mentioned was, an individual residing and working in the State of California.

6.      Plaintiff Sean Acuna is, and at all times mentioned was, an individual residing and working in the State of California.

7.      Plaintiff Albert Rubio is, and at all times mentioned was, an individual residing and working in the State of California.

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

2

[PROPOSED] SECOND AMENDED COMPLAINT

18 β

8.      Plaintiff James Barker is, and at all times mentioned was, an individual residing and working in the State of California.

9.      Plaintiff Andrew Stanfield is, and at all times mentioned was, an individual residing and working in the State of California.

10.     Plaintiff Guillermo Fernandez is, and at all times mentioned was, an individual residing and working in the State of California.

11.     Plaintiffs are informed and believe defendant Akal Security, Inc. ("Akal") is, and at all times mentioned was, a corporation organized and existing under and by virtue of the laws of the State of New Mexico, and doing business in the County of Imperial, State of California.

12.     Plaintiffs do not know the true names and capacities of defendants sued as DOES 1 through 100, inclusive, and therefore sue them by fictitious names. Plaintiffs are informed and believe DOES 1 through 100, inclusive, are in some way responsible for the events and Plaintiffs' damages described in this complaint. Plaintiffs will seek leave to amend this complaint when the true names and capacities of these defendants have been ascertained.

III

JURISDICTION

13.     This Court has jurisdiction over this action for damages, restitution, injunctive relief and penalties pursuant to, among other provisions, California Labor Code sections 203, 226.7, 510, 512, 558, 1194 and 2698, et seq., IWC Wage Order No. 4 and California unfair competition laws ("UCL"), set forth in sections 17203 and 17205 of the California Business & Professions Code.

IV

CLASS ALLEGATIONS

14.     Plaintiffs' causes of action are brought and may properly be maintained as a class action pursuant to the provisions of California Code of Civil Procedure section 382. Plaintiffs bring this action on behalf of themselves and all members of the Class ("the Class").

3

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

19B

1    The Class that Plaintiffs represent is defined as follows:  all current and former security guards
2    who worked for Akal, or its predecessor, at the Department of Homeland Security facility
3    formally referred to as the Immigration and Customs Enforcement Service Processing Center
4    in Imperial County (the "Detention Center"), during the period April 15, 2002 to the present
5    (the "Class Period").  Plaintiffs bring no claims under federal law.  On information and belief,
6    more than two-thirds (2/3) of the Class members are, when this action was filed and continuing
7    to date, residents of the state of California, and, at the very least, more than one-third (1/3) of
8    the Class members are residents of the State of California.

9        15.    Plaintiffs Loera, Sonico, Martinez, Cuen, Acuna, Rubio, Barker, Stanfield and
10   Fernandez ("Subclass I plaintiffs") bring additional claims on behalf of themselves and a
11   Subclass ("Subclass I").  Subclass I is defined as follows:  all current and former security
12   guards who worked for Akal, or its predecessor, at the Detention Center at any time during the
13   Class Period and worked over eight hours in one or more workdays without receiving
14   overtime premium pay for all time over eight hours worked on those days.  Subclass I plaintiffs
15   and all Subclass I members are concurrently members of the Class.  Subclass I plaintiffs bring
16   no claims under federal law.  On information and belief, more than two-thirds (2/3) of Subclass
17   I members are, when this action was filed and continuing to date, residents of the state of
18   California, and at the very least, more than one-third (1/3) of Subclass I members are residents
19   of the state of California.

20       16.    Plaintiff Rubio ("Subclass II plaintiff"), brings additional claims on behalf of
21   himself and a second Subclass ("Subclass II").  Subclass II is defined as follows:  all current
22   and former security guards who worked for Akal, or its predecessor, at the Detention Center at
23   any time during the Class Period and left, or were terminated from, their employment with
24   Akal, or its predecessor, during the Class Period.  Subclass II plaintiff and all Subclass II
25   members are concurrently members of the Class.  Subclass II plaintiff brings no claims under
26   federal law.  On information and belief, more than two-thirds (2/3) of Subclass II members are,
27   when this action was filed and continuing to date, residents of the state of California, and at the
28

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

20 B

1  very least, more than one-third (1/3) of Subclass II members are residents of the state of
2  California.

3      17.    The members of the Class, Subclass I, and Subclass II for whose benefit the
4  action is brought are so numerous that joinder of all Class members is impracticable.  Plaintiffs
5  believe that there are over 300 members of the Class, over 200 members of Subclass I, and
6  over 75 members of Subclass II, although the exact numbers of individual members of the
7  Class, Subclass I, and Subclass II are presently unknown, and can only be ascertained through
8  appropriate discovery.  The identities of all Class, Subclass I, and Subclass II  members can be
9  readily ascertained by reference to Akal's records.

10      18.    Plaintiffs' claims are typical of the claims of Class members, because Plaintiffs
11  and each member of the Class worked for Akal without being provided the required meal
12  periods and rest breaks as mandated by California law, and were subjected uniformly to other
13  unlawful conduct by Akal.

14      19.    There are questions of fact and law common to the Class that predominate over
15  any questions affecting only individual Class members.

16      20.    Among the questions of fact common to the Class are the following:

    a.    whether Class members were compelled to work for periods of five or
more consecutive hours without having at least a one half hour break for
meals and without receiving the required premium pay;

    b.    whether Class members were compelled to work for periods of four or
more consecutive hours without having at least a one ten minute rest
period and without receiving the required premium pay;

    c.    whether Akal has failed to keep proper records for the Class members
working hours; and

    d.    whether Akal has failed to provide the Class members with wage
deduction statements that accurately reflect the gross and net wages
earned for each pay period.

5

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

21. Subclass I plaintiffs' claims are typical of the claims of Subclass I members, because Subclass I plaintiffs and each member of Subclass I, worked over eight hours in one or more workdays and was not paid overtime premium pay for the time over eight hours worked on those days.

22. There are also questions of fact and law common to Subclass I that predominate over any questions affecting only individual Subclass I members.

23. Among the questions of fact common to Subclass I are the following:

   a. whether Akal maintains a policy of not paying overtime premium pay for work performed in excess of eight hours in a workday in violation of California law; and

   b. whether Akal failed to pay Subclass I members overtime premium pay for work performed in excess of eight hours in a workday.

24. Subclass II plaintiff's claims are typical of the claims of Subclass II members, because Subclass II plaintiff and each member of Subclass II were not promptly paid their earned and unpaid wages at the time they left their employment at the Detention Center..

25. There are likewise questions of fact and law common to Subclass II that predominate over any questions affecting only individual Subclass II members.

26. Among the questions of fact common to Subclass II are the following:

   a. whether Akal failed to pay Subclass II members their earned and unpaid wages at the time of discharge or, for those Subclass II members who voluntarily left their employment, within 72 hours from the time they gave notice of their intention to quit; and

   b. whether Akal failed to pay Subclass II members their earned and unpaid wages within 30 days from the time of discharge or, for those Subclass II members who voluntarily left their employment, within 72 hours from the time they gave notice of their intention to quit.

27. Plaintiffs, Subclass I plaintiffs and Subclass II plaintiff are committed to the

6

MARKS, GOLIA & FINCH, LLP
i900 Harney Street
First Floor
in Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

22B

1   vigorous prosecution of this action. Plaintiffs, Subclass I plaintiffs and Subclass II plaintiff
2   have no unique claims, have no conflicts of interest with other Class members, Subclass I
3   members or Subclass II members and have retained competent counsel experienced in the
4   prosecution of Class actions. Accordingly, Plaintiffs, Subclass I plaintiffs and Subclass II
5   plaintiff are adequate representatives of the Class, Subclass I and Subclass II and will fairly
6   and adequately protect the interests of the Class, Subclass I and Subclass II.

7          28.    A Class action is superior to other available methods for the fair and efficient
8   adjudication of the controversy. In light of the amount of damage suffered by individual Class,
9   Subclass I and Subclass II members, individual actions by Class, Subclass I and Subclass II
10  members are impracticable and a class action is the only practicable method by which the
11  Class, Subclass I and Subclass II members can achieve redress from Akal and prevent Akal
12  from retaining millions of dollars of its ill-gotten gains. Individual actions would present a risk
13  of inconsistent adjudications, even though each Class, Subclass I and Subclass II member has
14  an effectively identical claim of right against Akal. Because the Class, Subclass I and Subclass
15  II claims can be proven almost entirely through Akal's own documents and witnesses, this case
16  entails no circumstances which will make it difficult to manage as a Class action. Individual
17  damages may be calculated from the information maintained in Akal's records, so that the cost
18  of administering any recovery can be minimized.

19         29.    This action may also be maintained as a class action because:
20               a.    the prosecution of separate actions by or against individual members of
21                      the Class, Subclass I and Subclass II would create a risk of:
22                     i.    inconsistent or varying adjudications with respect to individual
23                            members of the Class, Subclass I and Subclass II which would
24                            establish incompatible standards of conduct for the party
25                            opposing the Class, Subclass I and Subclass II, or
26                    ii.    adjudications with respect to individual members of the Class,
27                            Subclass I and Subclass II which would as a practical matter be

28                                                7

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
ian Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

23 B

dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

b.     the party opposing the Class, Subclass I and Subclass II has acted or refused to act on grounds generally applicable to the Class, Subclass I and Subclass II, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class, Subclass I and Subclass II as a whole.

30.    Plaintiffs and Class members work or have worked as security guards for Akal during the Class Period, at the Detention Center in El Centro, California.

31.    During the Class Period, plaintiffs and Class members were required by Akal to work for continuous periods of five hours or greater without having at least a one-half hour meal break in compliance with, and as mandated by, the California Labor Code and IWC Wage Order No. 4. Despite having denied plaintiffs and Class members of these meal breaks, Akal failed to compensate plaintiffs and Class members with the requisite premium pay as set forth in the California Labor Code.

32.    During the Class Period, plaintiffs and Class members were required by Akal to work for continuous periods of four hours or greater without having at least a ten minute rest period in compliance with, and as mandated by, the California Labor Code and IWC Wage Order No. 4. Despite having denied plaintiffs and Class members of these rest periods, Akal failed to compensate the plaintiffs and Class members with the requisite premium pay as set forth in the California Labor Code.

33.    During the Class Period, Subclass I plaintiffs and Subclass I members each worked in excess of eight hours in one or more workdays. In violation of the California Labor Code, Akal did not pay, and Subclass I plaintiffs and Subclass I members did not receive the full amount of overtime premium pay for their work on these days.

/ / / / /

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

240

34.    During the Class Period, Subclass II plaintiff and each Subclass II member left, or was terminated from, his or her employment with Akal during the Class Period.  At the time that Subclass II plaintiff and Subclass II members left, or were terminated from, their employment, they had not been paid the full amount of wages they had earned during their employment.  In violation of the California Labor Code, Akal failed to pay Subclass II plaintiff and Subclass II members their earned and unpaid wages at the time of discharge or, for those Subclass II members who voluntarily left their employment, within 72 hours from the time they gave notice of their intention to quit.

35.    During the Class Period , plaintiffs are informed and believe Akal failed to provide Plaintiffs and Class members with accurate wage deduction statements showing the actual hours worked and wages earned Plaintiffs and Class members.

## FIRST CAUSE OF ACTION

(Failure to Pay Meal Period Premium Pay –
On behalf of Plaintiffs and Class members Against Akal and DOES 1 through 100)

36.    Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 35 above.

37.    California law requires an employer to pay an additional one hour of compensation for each meal period the employer fails to provide.  Employees are entitled to an uninterrupted meal period, during which employees are relieved of all duties, of at least thirty minutes for each five-hour work period.  Plaintiffs and Class members have consistently worked over five hours in a workday without a meal period.

38.    Defendant failed to provide Plaintiffs and Class members with timely meal breaks of not less than thirty minutes for each five-hour period worked as required by California law.

39.    Plaintiffs and Class members are entitled to recover an amount equal to one hour of wages per missed meal break, interest, applicable penalties, attorneys' fees and costs.

/ / / / /

9

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

25 B

SECOND CAUSE OF ACTION

(Failure to Pay Rest Break Premium Pay –
On behalf of Plaintiffs and Class members Against Akal and DOES 1 through 100)

40.    Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 39 above.

41.    California law requires an employer to pay an additional one hour of compensation for each rest period the employer fails to provide.  Employees are entitled to a paid ten minute rest break for every four hour period worked.  Plaintiffs and Class members have consistently worked over four hour periods per day with no rest breaks.

42.    Plaintiffs and Class members are entitled to recover an amount equal to one hour of wages per missed rest break, interest, applicable penalties, attorneys' fees and costs.

THIRD CAUSE OF ACTION

(Failure to Pay Overtime Premium Pay –
On behalf of Subclass I Plaintiffs and Subclass I Members Against Akal and DOES 1 through 100)

43.    Subclass I plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1 through 42 above.

44.    California law requires an employer to pay each employee premium pay at a rate of one and a half times the employee's regular hourly wage for each hour (or fraction thereof) that an employee works in excess of eight hours in a workday.

45.    During the Class Period, Subclass I plaintiffs and Subclass I members each worked in excess of eight hours in one or more workdays.

46.    In violation of the California Labor Code, Akal did not pay, and Subclass I plaintiffs and Subclass I members did not receive the full amount of overtime premium pay for their work on these days.

47.    Subclass I plaintiffs and Subclass I members are entitled to recover the full amount of their overtime premium pay, interest, applicable penalties, attorneys' fees and costs.

/ / / / /

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

10

[PROPOSED] SECOND AMENDED COMPLAINT

26 B

## FOURTH CAUSE OF ACTION
(Recovery of Waiting-Time Penalties [Labor Code, § 203] –
On behalf of Subclass II plaintiff and Subclass II members
Against Akal and DOES 1 through 100)

48.    Subclass II plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 47 above.

49.    Pursuant to Labor Code section 201, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

50.    Pursuant to Labor Code section 202, "[i]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

51.    Akal failed to pay the earned and unpaid wages of Subclass II plaintiff and Subclass II members within 30 days from the time such wages should have been paid under Labor Code sections 201 and 202.

52.    Pursuant to Labor Code section 203, "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

53.    Accordingly, Subclass II plaintiff and Subclass II members are entitled to recover waiting-time penalties under Labor Code section 203 in an amount equal to 30 times the daily wage of Subclass II plaintiff and each Subclass II member.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

11

[PROPOSED] SECOND AMENDED COMPLAINT

27B

## FIFTH CAUSE OF ACTION

(Violations of the UCL – On behalf of Plaintiffs and Class members
Against Akal and DOES 1 through 100)

54.     Plaintiffs incorporate each and every allegation contained in Paragraphs 1 through 53 above.

55.     The UCL prohibits business practices which are "unlawful."

56.     Akal has committed, and upon information and belief continues to commit, ongoing unlawful business practices within the meaning of the UCL, including, but not limited to:

a.     Compelling plaintiffs and Class members to work for periods of five or more consecutive hours without having at least a one half hour break for meals;

b.     Compelling plaintiffs and Class members to work for periods of four or more consecutive hours without having at least a one ten minute rest period;

c.     Failing to pay plaintiffs and Class members their premium wages earned while working without the legally mandated meal and rest breaks;

d.     Failing to pay Subclass I plaintiffs and Subclass I members the full amount of premium wages earned during workdays in excess of eight hours;

e.     Failing to pay Subclass II plaintiffs and Subclass II members the full amount of their earned and unpaid wages at the time of discharge or, for those Subclass II members who voluntarily left their employment, within 72 hours from the time they gave notice of their intention to quit;

f.     Failing to provide accurate and itemized wage statements required under California law;

/ / / / /

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
an Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

28B

g.    Failing to prepare and maintain all records required under California law; and

h.    Failing to post required notices at the workplace.

57.    The unlawful business practices described above have proximately caused monetary damages to plaintiffs and Class members and to the general public.

58.    Pursuant to the UCL, plaintiffs and Class members are entitled to restitution of money or property acquired by Akal by means of such unlawful business practices, in amounts not yet known, but to be ascertained at trial.

59.    Pursuant to the UCL, plaintiffs, Class members and the general public are entitled to injunctive relief against Akal's ongoing continuation of such unlawful business practices.

60.    If an injunction does not issue enjoining Akal from engaging in the unlawful business practices described above, plaintiffs and Class members and the general public will be irreparably injured, the exact extent, nature and amount of such injury being impossible to ascertain.

61.    Plaintiffs have no plain, speedy, and adequate remedy at law.

62.    Akal, if not enjoined by this Court, will continue to engage in the unlawful business practices described above in violation of the UCL, in derogation of the rights of plaintiffs and Class members and of the general public.

63.    Plaintiffs' success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.

64.    Private enforcement of these rights is necessary as no public agency has pursued their enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action.

65.    Plaintiffs and Class members are therefore entitled to an award of attorneys' fees and costs of suit pursuant to California Code of Civil Procedure section 1021.5.

13

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

29B

<u>SIXTH CAUSE OF ACTION</u>

(Penalties Under California Labor Code Section 2699 – On behalf of Plaintiffs and Class members Against Akal and DOES 1 through 100)

66.     Plaintiffs incorporate each and every allegation contained in Paragraphs 1 through 65 above.

67.     On April 7, 2006, counsel for plaintiff sent letters to the California Labor and Workforce Development Agency and Akal pursuant to California Labor Code section 2699.3.

68.     Counsel for plaintiffs have received written notice from the California Labor and Workforce Development Agency stating that it does not intend to investigate the violations set forth in the April 7, 2006 letter.  Pursuant to California Labor Code section 2699.3, subdivision (a)(2)(A), plaintiffs are entitled to commence this action for penalties.

69.     As a result of the acts alleged above, plaintiffs seek penalties under California Labor Code section 2699 because of Akal's violation of numerous provisions of the California Labor Code including, but not limited to, the following:  Labor Code, §§ 201, 202, 203, 204, 207, 208, 210, 226, 226.3, 226.7, 510, 512, 558, 1174, 1175, 1194, 1198, 1199 and the provisions of Industrial Welfare Commission Wage Order No. 4.

70.     Pursuant to California Labor Code section 2699, plaintiffs are entitled to be awarded twenty-five (25 %) percent of all penalties due under California law, in addition to interest, attorneys' fees and costs.

71.     The Court should award seventy-five (75 %) percent of the penalties due under California law to the State of California.

<u>PRAYER</u>

WHEREFORE, Plaintiffs and Class members pray for judgment against Akal, as follows:

<u>FOR THE FIRST CAUSE OF ACTION</u>:

1.     For an order certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

14

MARKS, GOLIA &
FINCH, LLP
900 Harney Street
First Floor
In Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

30 B

2.    For compensatory damages according to proof;

3.    For enhanced damages and penalties as permitted under California law;

4.    For pre-judgment interest;

5.    For costs of suit; and

6.    For reasonable attorneys' fees.

FOR THE SECOND CAUSE OF ACTION:

1.    For an order certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

2.    For compensatory damages according to proof;

3.    For enhanced damages and penalties as permitted under California law;

4.    For pre-judgment interest;

5.    For costs of suit; and

6.    For reasonable attorneys' fees.

FOR THE THIRD CAUSE OF ACTION:

1.    For an order certifying Subclass I and appointing Subclass I plaintiffs and their counsel to represent Subclass I;

2.    For compensatory damages according to proof;

3.    For enhanced damages and penalties as permitted under California law;

4.    For pre-judgment interest;

5.    For costs of suit; and

6.    For reasonable attorneys' fees.

FOR THE FOURTH CAUSE OF ACTION:

1.    For an order certifying Subclass II and appointing Subclass II plaintiff and his counsel to represent Subclass II;

2.    For waiting-time penalties pursuant to Labor Code section 203;

3.    For pre-judgment interest;

MARKS, GOLIA &
FINCH, LLP
1900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

15

[PROPOSED] SECOND AMENDED COMPLAINT

31 B

4.    For costs of suit; and

5.    For reasonable attorneys' fees.

FOR THE FIFTH CAUSE OF ACTION:

1.    For an order certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

2.    For disgorgement of all monies which Akal has illegally gained;

3.    For restitution according to proof at trial;

4.    For an order enjoining Akal from any further acts and practices which violate the UCL; and

5.    For attorneys' fees and costs.

FOR THE SIXTH CAUSE OF ACTION:

1.    For penalties as permitted under California law;

2.    For prejudgment interest;

3.    For costs of suit; and

4.    For reasonable attorneys' fees.

ON ALL CAUSES OF ACTION:

1.    For reasonable attorneys' fees;

2.    For costs of suit incurred herein;

3.    For such other and further relief as this Court may deem just and proper; and

4.    For interest on all monies due.

DATED:  November 20, 2007

Respectfully submitted,

MARKS, GOLIA & FINCH, LLP

By:_____
    JASON R. THORNTON
    BERNARD F. KING III
    Attorneys for Plaintiffs David Loera, Paul Sonico, Luis Martinez, Leo Cuen, Sean Acuna, Albert Rubio, James Barker, Andrew Stanfield and Guillermo Fernandez

974.002/BK767.1.[final]am

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

[PROPOSED] SECOND AMENDED COMPLAINT

32 B

**EXHIBIT C**

Collective Bargaining Agreement

Between


AKAL SECURITY, INCORPORATED


and the


SECURITY, POLICE, AND FIRE PROFESSIONALS OF AMERICA

Amalgamated Local #165

33 C

AKAL/Loera 0306

## PREAMBLE

THIS AGREEMENT is made and entered by and between AKAL SECURITY, INCORPORATED, a New Mexico corporation, hereinafter referred to as the "Employer" or "Company," and Security, Police, and Fire Professionals of America (SPFPA), on behalf of its Local # 165, hereinafter referred to as the "Union".

34C

CBA (Akal & SPFPA Local 165   2003 – 2006)

AKAL/Loera 0307

# ARTICLE 1

## GENERAL PROVISIONS

### SECTION 1.1 BARGAINING UNIT

This agreement is entered between Akal Security, Inc., and SPFPA, Local # 165 (hereinafter referred to as the Union). The Company recognizes the Union as the sole and exclusive bargaining representative for the purpose of collective bargaining as defined in the National Labor Relations Act.

The unit is defined as all full-time and part time position Custody Officer and Lead Custody ~Sergeants~ Officers employed by the Company at the INS Service Processing Center, El Centro, California, excluding all other employees including office clerical employees and professional employees as defined in the National Labor Relations Act.

This agreement shall be binding upon both parties, their successors and assigns. In the event of a sale or transfer of the business of the employer, or any part thereof, the purchaser or transferee shall be bound by this agreement.

### SECTION 1.2 NEGOTIATING COMMITTEE

The Company agrees to recognize a Negotiating Committee composed of up to four members and one alternate selected by the Union to represent the Employees in collective bargaining negotiations.

### SECTION 1.3 STEWARD SYSTEM

A.    The Company agrees to recognize a steward system.

B.    The Union agrees that the stewards will work at their regular jobs at all times except when they are relieved to attend to the business of the Grievance Procedure as outlined in this Agreement. Aggrieved employees will be paid their regular rate of pay in the conduct of Company Union business during scheduled working hours.

C.    If the Employee requests, the Company will call for a steward prior to any disciplinary action taken, whether it be written or verbal. The supervisor will release the steward as soon as possible. The Union Steward will be paid for time spent in the regard, upon receiving Supervisor approval of relief from duty.

### SECTION 1.4 MANAGERS AND SALARIED PERSONNEL

Managerial and salaried Employees shall not perform the duties of the Employees in the bargaining unit, except in an emergency.

35C

3

AKAL/Loera 0308

## SECTION 1.5 CLASSIFICATIONS

**A.** Full-time Employees are those Employees who are scheduled to work fourty (40) hours per week and regularly work thirty-two (32) hours or more a week.

**B.** Part-time Employees are those Employees who are scheduled to regularly work less than thirty-two (32) per week.

**C.** Employees covered by this agreement shall not be required to deliver office supplies, furniture, equipment, or distribution that does not pertain to normally assigned duties.

**D.** Employees covered by this Agreement shall not be required to perform janitorial service other than to clean up or pick up after themselves.

## SECTION 1.6 UNION SECURITY

**A.** An Employee who is a member of the Union at the time this Agreement becomes effective shall continue membership in the Union for the duration of this Agreement, to the extent of tendering the membership dues uniformly required as a condition of retaining membership in the Union.

**B.** An Employee who is not a member of this Union at the time that this Agreement becomes effective shall, within ten (10) days after the 30th day following the effective date of this Agreement or date of hire either:

1. Become a member of the Union and remain a member.

2. Pay the Union a service fee. The amount of this service fee shall be equal to that paid by regular Union members to include regular and usual initiation fees. The service fee will not include any assessments, special or otherwise. Such payments shall commence on the 30th day after the date of hire.

   a) Employees who are members of, and adhere to the established and traditional tenets of a bona-fide religion, body, or sect, which has historically held conscientious objections to joining or financially supporting labor organizations, shall, instead of the above, be allowed to make payments in amounts equal to the agency fee required above, to a tax-exempt organization (under Section 501(c)(3) of the IRS Code). The Union shall have the right to charge any Employee exercising this option, the reasonable cost of using the arbitration procedure of this Agreement on the Employee's individual behalf. Further, any Employee who exercises this option shall twice a year submit to the Union proof that the charitable contributions have been made.

**C.** The obligations set forth in this Article shall only be effective to the extent permitted by controlling law, including, but not limited to, any Executive Orders permitting or restricting Union security rights. If there is a legal challenge to any provision of this

AKAL/Loera 0309

36 C

Article, the Employer may suspend its obligations under this Article for the duration of the dispute after conferring on the matter with the Union.

D. The Union, including its International, agrees to save and hold the Employer harmless from any and all claims on account of any matter relating to the terms of this Article, including, but not limited to, any claims by any Employee(s) and compliance with the law.

## SECTION 1.7 DUES CHECKOFF

A. The Company agrees to deduct dues as designated by the Union on a monthly basis from the paycheck of each member of the Union. These deductions will be made only upon written authorization from the Employee on a form provided by the Union. It is understood that such deductions will be made only so long as the Company may legally do so. The Company will be advised in writing, by the Union, as to the dollar amount of the Union membership dues.

B. The Company will remit all such deductions to the Financial Secretary/Treasurer within five (5) business days from the date that the deduction was made, via direct deposit, if possible. All costs related to direct deposit will be borne by the Union. The Union agrees to furnish the Company with the current routing number for direct deposit. The Company shall furnish the Financial Secretary/Treasurer with a deduction list, setting forth the name, address, date of hire and amount of dues, within seven (7) business days of each remittance. The Union agrees to hold the Company harmless from any action or actions growing out of these deductions initiated by an Employee against the Company, and assumes full responsibility of the dispositions of the funds so deducted, once they are paid over to the Union. Errors made by the Company in the deduction or remittance of monies shall not be considered by the Union as a violation of this provision, providing such errors are unintentional and corrected when brought to the Company's attention.

## SECTION 1.8 INTENT OF PARTIES

The Union and the Company agree to work sincerely and wholeheartedly to the end that the provisions of this Agreement will be applied and interpreted fairly, conscientiously, and in the best interest of efficient security operations. The Union and the Company agree to use their best efforts to cause the Bargaining Unit Employees, individually and collectively, to perform and render loyal and efficient work and services on behalf of the Company. Neither the Company, nor the Union, nor their representatives, nor their members will intimidate, coerce, or discriminate in any manner against any person in its employ by reason of his/her membership and activity or non-membership or non-activity in the Union.

It is expressly understood and agreed the services to be performed by the Employees covered by this Agreement pertain to and essential to the operation of the INS Detention Center Service Processing Center. Both the Company and the Union recognize their paramount goal is to maintain safety of the operations of the INS Detention Center.

37 C

AKAL/Loera 0310

## SECTION 1.9 ANTI-DISCRIMINATION

Neither the Company nor the Union will discriminate against any Employee because of race, color, religion, sex, age, national origin, Vietnam Era Veterans status, disability or other protected reason. The Employer will treat Employees with dignity and respect at all times. Employees will also treat each other as well as the employer with dignity and respect. The Company and the Union recognize that the objective of providing equal employment opportunities for all people is consistent with Company and Union philosophy, and the parties agree to work sincerely and wholeheartedly toward the accomplishment of this objective.

## ARTICLE 2

## SENIORITY

## SECTION 2.1 SENIORITY DEFINED

A. Union seniority shall be the length of continuous service from the Employee's last date of hire as CO for the Employer, past or present and/or any predecessor Employer. Seniority shall not accrue until the Employee has successfully completed the probationary period. Seniority shall be applicable in determining the order of layoff and recall, shift bidding, vacation schedules, extra work, transfers, and other matters as provided for in this Agreement.

B. For the purposes of shift bidding, vacation schedules, transfers, days off and extra work, union seniority shall be defined as seniority within the work site.

C. Any Employee permanently transferred out of the designated Local Bargaining Unit for any reason shall lose their Union seniority as it applies to the order of layoff and recall, shift bidding, vacation schedules, extra work, and other matters as provided for in this Agreement.

D. Part-time Employees will have seniority only among other part-time Employees. Any part-time Employee who becomes full-time Employee will be placed on the seniority list for full-time Employees in accordance with the date they become a full-time Employee or once they have completed the equivalent of the ninety (90) day probationary period.

E. Employees who make Company approved transfers will maintain Company security based on original hire date after the approved tranfer.

## SECTION 2.2 SENIORITY LISTS

The Company will provide a list to the Local twice a year on demand of the Union. The data will include name, location, classification, rate of pay, and last Entry on Duty date. The Union

will verify seniority and provide a copy of the confirmed seniority list to the Company within 14 days of receipt

## SECTION 2.3  PERSONAL DATA

Employees shall notify the Employer in writing, on the company provided form, of their proper mailing address and telephone number or of any change of name, address, or telephone number. The Company shall be entitled to rely upon the last known address in the Employer's official records.

## SECTION 2.4 TRANSFER OUT OF UNIT

Any Bargaining Unit Employee who is permanently promoted to a non-bargaining unit position for more than four (4) weeks shall have their Union seniority frozen. If they return to the bargaining unit at a later date their seniority will start again on that return date. Anyone performing in a non-bargaining unit position intermittently (for more than on consecutive shift) will have their seniority adjusted by the amount of time spent out of the unit.

## SECTION 2.5 PROBATIONARY EMPLOYEES

Probationary Employees will be considered probationary for a ninety (90) calendar day period after their hire date. The Union will still represent Probationary Employees for problems concerning wages, hours and working conditions, but the Company reserves the right to decide questions relating to transfers, suspensions, discipline, layoffs, or discharge of Probationary Employees without recourse to the grievance procedure contained in this Agreement.

Probationary Employees do not have seniority until the completion of the probationary period, at which time seniority dates back to the date of hire. The Probationary period can be extended by mutual agreement between the Company and the Union.

## SECTION 2.6 TERMINATION OF SENIORITY

The seniority of an Employee shall be terminated for any of the following reasons:
   A. the Employee quits or retires;
   B. the Employee is discharged;
   C. a settlement with the Employee has been made for total disability, or for any other reason if the settlement waives further employment rights with the Employer;
   D. the Employee is laid off for a continuous period of one year or 365 calendar days;
   E. the U.S. Government revokes the Employee's clearances;
   F. the Employee is permanently transferred out of the bargaining unit.

39 C

AKAL/Loera 0312

## ARTICLE 3

### JOB OPPORTUNITIES

## SECTION 3.1 FILLING VACANCIES

If a vacancy occurs in a regular position covered by this Agreement, and the Employer chooses to fill that vacancy, the job will be posted for a period of five (5) working days (excluding Saturdays, Sundays and holidays). The Project Manager or designee will notify the Union President in writing of such openings. The Union President will then verify that all part time position CO's have been notified. When a vacancy occurs, the Employer will fill the position with the most senior Employee who has applied for the position in writing, who has been trained (if required) to fill any necessary special qualifications for the new position.

## SECTION 3.2 LAYOFF AND RECALL

In the event of layoff or recall, when positions are being reduced, probationary Employees will be laid off first. Should it be necessary to further reduce the work force, Employees will be retained on the basis of seniority. Recall of Employees will be accomplished by recalling the last laid off Employee first, and so on.

## SECTION 3.3  APPOINTMENT OF SUPERVISORY STAFF

The U.S. Government in its contract with the Company creates specific guidelines for the job duties and qualifications of Supervisors. Based on these guidelines, all appointments will be made on the basis of suitability as evaluated by the Company. Suitability shall include an Employee's skills, experience, past performance, capabilities, and the needs of the operation. If, in the Employer's determination, Employees are equally qualified, seniority will prevail.

## ARTICLE 4

### MANAGEMENT'S RETAINED RIGHTS

## SECTION 4.1

Management of the business and direction of the security force are exclusively the right of management. These rights include the right to:

1. Hire;
2. Assign work and schedule;
3. Promote, Demote;
4. Discharge, discipline, or suspend based on Article 6;
5. Determine the size of the workforce, including the number, if any, of employees assigned to any particular shift.

6. Make and enforce work rules not inconsistent with the provisions of this agreement;
7. Require Employees to observe reasonable Employer rules and regulations;
8. Determine when overtime shall be worked;
9. Determine the qualifications of an Employee to perform work.

## SECTION 4.2

Any of the rights, power or authority the Company had prior to the signing of this Agreement are retained by the Company, except those specifically abridged or modified by this Agreement and any supplemental Agreements that may hereafter be made. The Company's failure to exercise any function reserved to it shall not be deemed a waiver of any such rights.

## ARTICLE 5

## GRIEVANCE PROCEDURE

### SECTION 5.1  INTENT

For purposes of this Agreement, a grievance shall mean a claimed violation, misinterpretation, or misapplication of any provision of this Agreement, or the challenge of any disciplinary action taken against a Union Employee, except that this grievance procedure shall not be used for any suspension or revocation of required DO clearances by the U.S. Government.   In addition, the grievance procedures outlined herein shall not apply to any non-disciplinary situation where the company is acting under express directives of the U.S. Government.

### SECTION 5.2  GENERAL PROVISIONS

A. The number of days outlined in Section 5.3 in the processing and presentation of grievances shall establish the maximum time allowed for the presentation and processing of a grievance. The term "days" shall not include Saturdays, Sundays or holidays when used in this Article.

B. Should either the Company, the Union, or the aggrieved employee fail to comply with the time limits as set forth in this Article, the party who failed to comply with the time limits shall forfeit the grievance.

C. Time limits set forth herein may be extended only by mutual agreement of the Union and Company.

### SECTION 5.3  GRIEVANCE PROCEDURE

All grievances shall be presented and processed in accordance with the following procedures:

A. **Informal Step** - The parties shall make their best efforts to resolve any dispute on an informal basis. Both the Company and the Union agree that the Employee will first discuss the complaint with their immediate supervisor (not in the bargaining unit), within five (5) working days of the incident being grieved, to start the informal

procedure. If the informal procedure is not invoked within five working days of Employee's knowledge of a grievable issue, then it is agreed by both parties that no further action can be taken. If the complaint is not satisfactorily adjusted within three (3) working days of the inception of the informal discussion, it may be submitted in writing to the Project Manager or designee in accordance with Step One.

B. **Step One** - If the matter is not resolved informally, the Employee shall, not later than ten (10) days after the informal discussion with the immediate supervisor, set forth the facts in writing, specifying the Article and paragraph allegedly violated. This shall be signed by the aggrieved Employee and the union representative, and shall be submitted to the Project Manager or designee with a copy to the Company's HR Director. The Project Manager or designee shall have ten (10) days from the date the grievance was received by the Project Manager or designee to return a decision in writing with a copy to the aggrieved Employee and the union representative.

C. **Step Two** - If the grievance is not settled in Step One, the grievance may be appealed in writing to the Company's Director of Human Resources or designee not later than ten (10) days from the denial by the Project Manager or designee. The Director of Human Resources or designee will have twenty (20) days from the date the grievance was received to return a decision, in writing, with a copy to the aggrieved Employee and the union representative.

D. **Grievance for Discipline** - Any grievance involving discharge or other discipline may be commenced at Step One of this procedure. The written grievance shall be presented to the Project Manager through the Site Supervisor or designee within ten (10) days after the occurrence of the facts giving rise to the Grievance.

## SECTION 5.4 ARBITRATION PROCEDURE

Grievances processed in accordance with the requirements of Section 5.3 that remain unsettled may be processed to arbitration by the Union, giving the Company's Director of Human Resources written notice of its desire to proceed to arbitration not later than fifteen (15) days after rejection of the grievance in Step Two. Grievances which have been processed in accordance with the requirements of Section 5.3 which remain unsettled shall be processed in accordance with the following procedures and limitations:

A. **Selection of an Arbitrator** - Within fifteen (15) days of receipt of the Union's written notice to proceed with arbitration, the Company and the Union will meet telephonically to jointly attempt to agree upon the selection of a neutral arbitrator. If, within fifteen (15) days, the parties fail to agree upon the selection of an arbitrator, the Union will request the Federal Meditation and Conciliation Service (FMCS) to supply a list of seven (7) arbitrators. An arbitrator will be selected from the list supplied by the FMCS by parties alternately striking from the list until one (1) name remains, and this individual shall be the arbitrator to hear the grievance.

**B. Decision of the Arbitrator -** The arbitrator shall commence the hearing at the earliest possible date. The decision of the arbitrator shall be final and binding upon the parties to the Agreement. Any decision shall be complied with, without undue delay after the decision is rendered. It is understood and agreed between the parties that the arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement.

**C. Arbitration Expense -** The arbitrator's fees and expenses, including the cost of any hearing room, shall be shared equally between the Company and the Union. Each party to the arbitration will be responsible for its own expenses and compensation incurred bringing any of its witnesses or other participants to the arbitration. Any other expenses, including transcript costs, shall be borne by the party incurring such expenses.

## SECTION 5.5 CLASS ACTION

The Union shall have the right to file a group grievance (class action) or grievances involving more than one (1) Employee at the Informal Step of the grievance procedure.

## SECTION 5.6 INDIVIDUAL GRIEVANCES

No individual may move a grievance to arbitration.

## ARTICLE 6

## DISCIPLINE

## SECTION 6.1 GROUNDS FOR DISCIPLINE AND DISMISSAL

After completion of the probationary period, as specified in Section 2.5, no Employee shall be disciplined, dismissed or suspended without just cause. Just cause shall include any suspension or revocation of clearance by ICE. The "final decision" on the employee's removal shall be determined by the Government, and the Employer shall be held harmless by the Union and the employee for any further claims made after this final determination. This provision is not intended to limit or prohibit the rights of any party to seek relief from other parties.

The Company's contract with the U.S. Government sets out performance standards and contract requirements for the CO's and all employees are required to comply with these standards. Failure to do so may lead to disciplinary action. Employees agree to comply with any non-disciplinary directive issued by the US Government.

The Company may discipline Employees when necessary and discharge those who fail to uphold U.S. Government or Company standards as described above. It is recognized by parties to this Agreement that progressive discipline generally shall be applied in dealing with Employees. However, it is also recognized that offenses may occur for which progressive discipline is not

11

43 C

AKAL/Loera 0316

applicable (e.g. fraud, gross misconduct, theft, etc.). Disciplinary measures vary depending on the seriousness of the matter and the past record of the Employee. Failure to comply with any investigation procedures will result in discipline up to and including termination.

# ARTICLE 7

## HOURS OF WORK AND OVERTIME

### SECTION 7.1  WORKDAY AND WORKWEEK

For the purposes of this Article, a regular workweek of forty (40) hours of work shall constitute a normal full-time workweek for full-time Employees. Shifts shall be scheduled at the discretion of the Employer to fulfill the needs of the U.S. Government. Nothing contained herein shall guarantee to any Employee any number of hours of work per day or week.

### SECTION 7.2  OVERTIME

An overtime rate of time and one-half (1 1/2) of an Employee's base rate of pay (exclusive of health and welfare and other fringe additions to pay) shall be paid for all hours actually worked in excess of forty (40) hours in a work week.

### SECTION 7.3  OVERTIME REQUIREMENT

If directed to work overtime (i.e. over forty [40] hours in a workweek) or extra hours, and the seniority system is not invoked due to shortness of notice to the Company, the Employee shall be required to do the work, unless the Employee is excused by the Company for good cause.

### SECTION 7.4  OVERTIME DISTRIBUTION

Bargaining Unit employees will be expected to work overtime assignments.  A list of volunteers shall be compiled by seniority for each shift.   When the senior volunteer works overtime his name will go to the bottom of the list.

When a employee is next on the list, and cannot work because of personal reasons, he/she will be passed over and the next Bargaining unit employee on the list will work overtime and the employee who turned down the over time will be next in turn for overtime.

Mandatory overtime will be inverse to voluntary, in that the employee with the least seniority will be required to meet the overtime requirement.   This includes involuntary call-in which results in overtime.

## ARTICLE 8

## WORK SHIFTS AND PAYMENT POLICIES

## SECTION 8.1 SHIFT BIDDING, HOURS OF WORK, & SENIORITY

Upon ratification of this agreement, the Company and the Union agree to meet within 60 days to design a mutually acceptable method for shift bidding and days off.

## SECTION 8.2 WAGE SCHEDULE

The base rate of pay for Custody Officers covered by this agreement in all locations are described in below:

**Current**

| | |
|---|---|
| Custody Officer | 18.05 per hour |
| Health and Welfare allowance | 3.05 per regular hr worked |
| Pension | 1.22 per regular hr worked |
| Uniform Allowance | 0.42 per regular hr worked |

**as of January 1, 2004**

| | |
|---|---|
| Custody Officer | 22.34 per hour |
| Health and Welfare allowance | 3.05 per regular hr worked |
| Pension | 1.22 per regular hr worked |
| Uniform Allowance | 0.42 per regular hr worked |

**as of January 1, 2005**

| | |
|---|---|
| Custody Officer | 23.00 per hour worked |
| Health and Welfare allowance | ** per regular hr worked |
| Pension | 1.22 per regular hr worked |
| Uniform Allowance | 0.42 per regular hr worked |

**as of January 1, 2006**

| | |
|---|---|
| Custody Officer | 23.70 per hour |
| Health and Welfare allowance | ** per regular hr worked |
| Pension | 1.22 per regular hr worked |
| Uniform Allowance | 0.42 per regular hr worked |

** The parties agree that either party may reopen negotiations for amendments to Health & Welfare Allowance at any time after September 1 and before October 1, for all years governed by this contract, by giving written notice to the other party. Any final agreement resulting from said negotiation shall be incorporated into the terms of this agreement. If the parties fail to reach

13

45 C

AKAL/Loera 0318

agreement, the dispute shall be submitted to arbitration in accordance with Article 5 of this agreement. All provisions of this Agreement, including, but not limited to, Article 16, shall remain in force during the terms of the negotiations and any resulting arbitration, and for the remainder of the terms of this agreement.

## SECTION 8.3 PAYDAY

Payday for all hourly Employees will be no later than 11 a.m. on Friday following the two (2) week pay period ending on Saturday, subject to change by mutual agreement. Should direct deposit become available, the company will make this option available to all employees.

## SECTION 8.4 UNDISPUTED ERROR

In case of an undisputed error on the part of the company as to an Employee's rate of pay, proper adjustment will be made in the next paycheck after the error has been brought in written form to the Company's attention. Any error, involving eight (8) hours of pay or more, will be corrected and paid within three (3) working days.

## SECTION 8.5 SHIFT DIFFERENTIAL

Employees working between the hours of 1500 and 2300 or any part there of will be paid a shift differential of 4%. Those employees working between the hours of 2300 and 0700 or any part there of will be paid a shift differential of 6%.

## ARTICLE 9

## HOLIDAYS

## SECTION 9.1 HOLIDAYS DEFINED

Whenever the term "holiday" is used, it shall mean:

| | |
|---|---|
| New Years Day | Independence Day |
| Veterans Day | Columbus Day |
| Christmas Day | Labor Day |
| Thanksgiving Day | Martin Luther King Birthday |
| Memorial Day | Presidents Day |
| Birthday | Good Friday |

## SECTION 9.2 MISCELLANEOUS HOLIDAY PROVISIONS

A. A full-time position Employee who is not required to work on a holiday shall be paid eight (8) hours straight time, exclusive of any shift premium for that holiday.

B. Any full-time position Employee who works as scheduled on a holiday shall receive the Employee's appropriate rate of pay times 1 and half for all hours worked, and in addition, shall receive eight (8) hrs holiday pay at the regular rate as described in (A) above.

CBA (Akal & SPFPA Local 165   2003 – 2006)

14

46 C

AKAL/Loera 0319

C. Any part time position Employee who works as scheduled on a holiday shall receive the Employee's appropriate rate of pay times for all hours worked, and in addition shall receive prorated holiday pay based on the number of actual hours the Employee. worked in the two (2) week pay period prior to the holiday.

D. In the event that the Holiday falls on a weekend, the term "holiday" will refer to the day that the U.S. Government designates as the Holiday.

E. Any employee who is requested and agrees to work on any of the above named holidays but fails to report to work for such holiday shall not receive holiday pay, and shall be subject to discipline. Employees must work the scheduled day before and the scheduled day after to receive holiday pay.

## ARTICLE 10

## VACATIONS

### SECTION 10.1 ELIGIBLE FULL-TIME EMPLOYEES

Eligibility for vacation benefits shall be based on Department of Labor (DOL) rules under Service Contract Act. Eligible full-time Employees shall be entitled to annual vacation based on their continuous years of service with the Employer (based on the Employee's anniversary date of employment) at their individual hourly rate of pay at the time payment is made in accordance with the following schedule:

Upon completion of one (1) year of service:  eighty (80) hours
Upon completion of five (5) years of service: one-hundred and twenty (120) hours
Upon completion of ten (10) years of service: one-hundred and sixty (160) hours
Upon completion of fifteen (15) years of service: two-hundred (200) hours

### SECTION 10.2 ELIGIBLE PART TIME POSITION EMPLOYEES

Part-time Employees are eligible for vacation benefits on a prorated basis, based on 2080 hours and defined by the maximums allowed in the contract. All paid hours during the preceding year will used to figure the employee's work hours.

### SECTION 10.3 SCHEDULING VACATIONS

Vacations, insofar is reasonably possible, shall be granted at the times most desired by the Employee, after the Employee's anniversary date. Employees who cash out vacation time are not entitled to participate in the vacation selection process, nor take vacation during the year unless approved under the guidelines for LWOP as outlined in Article 11.

CBA (Akal & SPFPA Local 165   2003 – 2006)

15

47 C

AKAL/Loera 0320

Employee will pick vacation by full time seniority with thirty (30) days to pick between November 1 and November 30 of each year. The Employee shall be ready to pick when asked. If not ready, the employee will be passed over and pick what is available when ready. Once the employee has picked his/her vacation by seniority the company will post a list of vacation schedules no later than January 01 of each year. Once posted, management cannot make any changes except as needed to maintain continuity of operations of the SPC. Employees will submit a written request based on available opening. This process is limited to vacation selections of 1 week increments.

All other vacation requests must be made in writing not less than 2 week prior to the proposed vacation dates. The Company will respond to these other requests with in 5 working days.

## SECTION 10.4 UNUSED VACATION

Vacations shall not be cumulative from one year to the next. Any earned but unused vacation time remaining at the end of a year of service (based on Employee's anniversary date of employment) shall be paid to the Employee.

## SECTION 10.5 PAY IN LIEU OF VACATION LEAVE

At any time during the year, Employees may request in writing to be paid for earned vacation, pay in lieu of taking actual vacation leave. Earned vacation pay will be paid in the next pay cycle.

## SECTION 10.6 TERMINATING EMPLOYEES

Upon termination of employment, Employees will be paid at their individual hourly rate vacation time earned as of their last anniversary date, but not used, as entitled by the Service Contract Act. (Example: An Employee who terminates one month into the next anniversary year is entitled to any of the previous year's earned accrued vacation not already used, and not to the additional month accrued in the new anniversary period).

## SECTION 10.7 VACATION - LAID OFF EMPLOYEES

Length of service with the Employer shall accrue for the purposes of vacation benefits while an Employee is on laid-off status for up to one (1) year. Employees will only be paid vacation benefits upon returning to work.

## SECTION 10.8 VACATION INCREMENTS

Consistent with Employer approval, efficiency, and economy of operations, Employees with two (2) or more weeks of vacation may take their vacation in segments of less than one (1) week each. Vacation must be taken in one (1) day (8 hour) increments

## ARTICLE 11

## LEAVES OF ABSENCE

### SECTION 11.1 LIMITATIONS

Personal leaves of absence for non-medical emergencies may be granted at the sole discretion of the Employer without loss of seniority to the Employee. Such leaves, if granted, are not to exceed 30 days, unless a special extension is approved by the Employer. An employee on any unpaid leave of absence will be required to use available vacation or personal leave time in full before beginning the unpaid leave.   Length of service with the Employer shall not accrue for purposes of vacation, holiday, or other accrued benefits for any unpaid leave of absence over thirty (30) days.  The Employer will make every reasonable effort to maintain an Employee's position while on a non-statutory unpaid leave of absence. Unpaid leaves of absence may be taken only with written approval of the Employer or in a case of verified personal emergency. Failure to report for scheduled shifts without Employer permission may face disciplinary action.

Any full-time employee who uses more than two (2) days of leave without pay (LWOP) per Government contract year for absences not covered by Family and Medical Leave Act of 1993 (FMLA), Worker's Compensation, or whose absence is not a company approved accommodation and/or leave, may face disciplinary action.

### SECTION 11.2 MEDICAL LEAVE

A. The Family and Medical Leave Act of 1993 (FMLA) is incorporated herein.

B. The Company agrees to honor the FMLA for all eligible Employees.

C. During medical leave, the Employee shall be required to furnish a report from the doctor when requested periodically by the Employer. Upon the expiration of said leave, the Employee shall furnish the Employer with a statement, signed by the doctor, which establishes the fitness of the Employee to return to the Employee's previously held work. Any Employee who is not able to return to work with a medical clearance from a licensed physician at the end of a maximum medical leave shall be terminated from Employment.

D. If the Employee files for medical leave on false pretext or works for another employer without pre-authorization from the company, the Employee will be removed from the CO program and from employment with Employer.

### SECTION 11.3 MILITARY LEAVE

An Employee of the Company who is activated or drafted into any branch of the armed forces of the United States under the provisions of the Selective Service Act or the Reserve Forces Act shall be granted an unpaid military leave of absence, as required under the federal law, for the

49 C
AKAL/Loera 0322

time spent in full-time active duty. The period of such leave shall be determined in accordance with applicable federal laws in effect at the time of such leave.

## SECTION 11.4 UNION LEAVE

The Company agrees to grant 5 days at one time of Union Leave (LWOP) to Union Officers (Maximum 5 employees with no more than 3 per shift), as long as staffing permits, upon 14 days written request for the purpose of attending Union Conventions, or other meetings of vital interest to the Union, for the duration required to perform the duties of the position, which he or she was elected or appointed and with 7 days notice for a local meetings of 1 day or less or 14 days notice for more than 1 day of leave.

## SECTION 11.5 PERSONAL/SICK LEAVE

Each Employee shall be entitled to nine (9) days of sick leave per full contract year, all days made available on their anniversary date. Of the nine (9) sick day entitlement, six (6) days shall be available for cash out at the end of the Employees anniversary year. Any unused portion of these six (6) personal days will be cashed out with in 30 days of the anniversary date. The additional three (3) days of the nine (9) days may be taken after the six (6) days have been used and any unused portion of these three (3) sick days shall not be cashed out at the end of the contract year and cannot be carried over.

    A. Sick days shall be used in no less than eight-hour increments and shall be paid when taken by the Employee.

    B. Upon termination of employment, Employee will be paid at their individual hourly rate for any unused, earned personal leave, based upon the number of actual hours Employee worked during that year based on hire date anniversary. If the Employee has used more personal days upon termination than he/she earned based upon time worked on the contract, the amount of the overage will be deducted from the Employee's final paycheck.

    C. Sick leave (and vacation) days may be used to cover absences caused by illness. Any Employee who is unable to report to work because of sickness must notify the Employer at least four (4) hours prior to the beginning of his/her regular shift in order to be eligible for paid sick leave benefits. Proof of illness may be required after two (2) days. Disciplinary action may result from excessive, unapproved absenteeism.

## SECTION 11.6 PROCESSING UNPAID LEAVES OF ABSENCE

The Employer will consider requests for unpaid leaves of absence and may grant them at its sole discretion. An unpaid leave of absence must be processed in the following manner:

    A. All requests for unpaid leaves of absence shall be submitted in writing to Project Manager or designee at least ten (10) calendar days prior to the date the leave will take effect, except in cases of verified personal emergencies, and include:

CBA (Akal & SPFPA Local 165   2003 – 2006)

18

50 C

AKAL/Loera 0323

1. The reasons for such leave;
2. The effective dates of such leave;
3. The estimated date of return to work.

B. The Company will respond to the request within seven (7) working days.

C. The written request for leave of absence shall be submitted to the Project Manager for final approval. If the request for the leave of absence is approved by the Project Manager, a copy of the approved leave of absence will be given to the Employee involved.

D. Extensions of the leave of absence may be granted at the sole discretion of the Employer, upon written request by the Employee within ten (10) calendar days prior to the expiration of the leave of absence. Extensions, when granted, shall not total more than thirty (30) days.

## SECTION 11.7 GENERAL PROVISIONS

Seniority shall accumulate during the period of any approved leave of absence subject to the provisions of this Agreement.

## SECTION 11.8 JURY DUTY

Full time employees on the payroll with one or more years of continuous service will be reimbursed up to five (5) days in any calendar year for any loss of income during their otherwise scheduled workweek for time spent on Jury Duty.

Said reimbursement shall be offset by any jury fees received by the employee. Employees must inform their supervisor immediately upon receiving a notice to report for jury duty. The Employee reserves the right to request an exemption when the Employer determines that the employee's absence would create hardship.

## SECTION 11.9 BEREAVEMENT LEAVE

If necessary for an employee to lose time from work because of a death in the immediate family the employee shall be entitled to 5 days paid leave. If the funeral takes place more than 250 miles from the site the employee shall be entitled to 7 days leave.

Immediate family is defined to mean an employee's father, mother, spouse, sister, brother, child (including legally adopted children and/or step children), father in law, mother in law, sister in law, brother in law, grandparents and grand children.

The employer reserves the right to verify all bereavement leave requests and may require proof of the death for which the employee requests leave.

## SECTION 11.10 ABSENTEEISM FROM DUTY

AKAL/Loera 0324

When an employee fails to report for duty or to call the appropriate supervisor four (4) *two* hours prior to the start of the scheduled shift, it is considered a "no call/no show". In the event an emergency prevents an employee from reporting to work and notifying the office prior to the scheduled shift, an employee must contact the appropriate supervisor as soon as possible and explain the failure to report for duty. Explanations are subject to verification. Unverified and unexcused absences from duty will result in disciplinary action.

Akal Security, Inc., considers that an employee has resigned their position voluntarily (voluntary separation) if the employee is absent from duty due to "no call/no show" more that 3 shifts or 2 consecutive days in a 12 month period.

## ARTICLE 12

## HEALTH, WELFARE AND UNIFORM ALLOWANCES

### SECTION 12.1 PAYMENTS

For the life of this Agreement, the Employer will make health and welfare payments to Full Time Employees on all hours up to forty (40) hours per week, and up to a total of 2080 hours per contract year, as described in Appendix A. All Health and Welfare funds will be forwarded to the Union. With these funds, the Union shall provide a full health insurance plan with no deductible or co-payment and a standard Dental plan for each full time regular employee and their legal dependents at no additional charge. The Company will retains the right to approve any health insurance and/or dental plan. The Company upon demand may audit any such plan, not more than 4 times a year.

All full time employee's and their dependants will join this plan after ninety (90) days of employment.

Any part time employee who on average worked more than 32 hours in the 90 day period based on the employees anniversary date shall be entitled to insurance coverage. Subject to review every quarter based anniversary.

Employees who take leave with out pay will be required to make monthly payments to continue their coverages.

### SECTION 12.2 OTHER BENEFITS

The Employer will offer Employees the opportunity to participate in other available Employee paid fringe benefit programs made available to all Officers employed by the Company. These programs may include cafeteria plans, payroll deduction plans, retirement plans, insurance plans, 401(k) plans, and any other plan mentioned in this Agreement.

### SECTION 12.3 UNIFORM MAINTENANCE

52 c
AKAL/Loera 0325

Neither Union officials nor Union members shall, during working time (excluding break and lunch periods), solicit membership, receive applications, hold meetings of any kind for the transaction of Union business, or conduct any Union activity other than the handling of grievances as described in this Agreement. No Employee may leave their post without permission from the Employer under any circumstances, unless there is appropriate Government permission granted. No Employee may be at the worksite at any time unless engaged in company approved activities

## SECTION 13.5 MANAGEMENT/LABOR RELATIONS

In the interest of good communications the Company and the Union agree there shall be a Labor and Management Meeting consisting of three (3) representatives of the Union and upto three representatives from the Company. Both parties will mutually agree upon any additional participants. The purpose of this meeting will be improve labor/management relations by providing an informal forum for the free exhange of views and discussion of mutual concerns of both parties. It is clearly not the intention that this exchange by-pass the normal grievance procedure. Any agreements reached at these meetings to change practices or policies shall be put in writing and will only be effective when signed by both parties.

It is suggested that these meetings will be held monthly. All scheduled meeting times and places will be mutually agreed to by both parties.

## SECTION 13.6 ACCESS TO PERSONNEL FILES

As possible, and in accordance with applicable laws, the Union shall have access to personnel records of an employee in conjunction with the investigation of a grievance or for use in arbitration. The union will present written authorization from the employee before access will be granted. The Union shall maintain the confidentially it of all information contained therein.

## SECTION 13.7 GUARD CARDS AND PERMITS

All employees shall submit to the Company within fifteen (15) calendar days of the execution of this agreement a copy of the California guard card. All employees shall be required, at their own expense,, to maintain a valid California Guard card. In the event that employee's California Department Consumer Affairs Guard Card Permit lapse or becomes otherwise invalidated, the Employer may temporally suspend but not discharge the employee. Once having proof that the payment renewal was sent within ninety (90) days guideline set forth by the Department of Consumer Affairs, the employee may continue employment as long as the employee has shown proper documentation that their guard card is valid.

## SECTION 13.7 TRAINING

The Company agrees to pay employees for required and mandated government training to the extent required by the contract between the INS and the Company.

53 C
AKAL/Loera 0326

## ARTICLE 14

## 401(k) PLAN

The Company shall provide a 401(k) plan to which Officers are eligible to contribute, whether Union or Non-Union. Employees shall be subject to the eligibility requirements and rules of the Plan. All Pension moneys shall be paid directly into the 401K plan.

## ARTICLE 15

## SAFETY

## SECTION 15.1  SAFETY POLICY

It is the policy of the Company to make its best efforts to provide Employees with places and conditions of employment that are free from or protected against occupational safety and health hazards. Under this Agreement, all worksites and facilities are the property of the U.S. Government, who is responsible for the condition and safety of the worksite.

While there is a safety committee in place at the site, the Union will continue to select the representative for the committee.

## SECTION 15.2 OSHA STANDARDS

The Company will report any safety violations observed or reported to the Company in any U.S. Government-provided workstation or break room.

## ARTICLE 16

## CONTINUITY OF OPERATIONS

## SECTION 16.1 NO STRIKES

A. Both the Company and the Union agree that continuity of operations is of utmost importance to the Company's security operations.  Therefore, so long as this Agreement is in effect, the Union and the Company agree that there will be no strikes, lockouts, work stoppages, illegal picket lines, slowdowns, or secondary boycotts during the term of this Agreement.

B. Upon hearing of an unauthorized strike, slowdown, stoppage of work, planned inefficiency, or any curtailment of work or restriction or interference with the operation of the Employer, the Union shall take affirmative action to avert or bring such or bring such activity to prompt termination.

## SECTION 16.2 LOCKOUTS

54C

AKAL/Loera 0327

During the life of this Agreement, the Employer shall not lockout any Employees covered in this Agreement.

## ARTICLE 17

## SEPARABILITY OF CONTRACT

In the event that any provision of this Agreement shall at any time be declared invalid by any court of competent jurisdiction or through U.S. Government regulations or decree, such parties hereto agree to renegotiate such provision or provisions of this Agreement for the purpose of making them conform to the decree or U.S. Government statutes, so long as they shall remain legally effective. It is the express intention of the parties hereto that all other provisions not declared invalid shall remain in full force and effect.

## ARTICLE 18

## ENTIRE AGREEMENT

The parties acknowledge that during negotiations that resulted in this agreement, each had the unlimited right and opportunity to make demands and proposals with respect to all proper subjects of collective bargaining; that all such subjects were discussed and negotiated upon; and that the agreements contained herein were arrived at after free exercise of such rights and opportunities. Therefore, the Company and the Union shall not be obligated to bargain collectively on any matter pertaining to conditions of employment, including but not limited to, rates of pay, wages, hours of work, disciplinary actions, training requirements, etc., during the term of this Agreement, except as specifically provided for in other provisions of this Agreement.

## ARTICLE 19

## DURATION

This Agreement shall be effective from 12;00 noon, October 31, 2003 through December 30, 2006 and supersedes any and all prior agreements or understandings between the parties.

24
ꜱꜱ C

AKAL/Loera 0328

IN WITNESS WHEREOF, the parties have caused their representatives to sign this Agreement as full acknowledgment of their intention to be bound by the Agreement.

FOR: *SPFPA*

BY: *David Payne*

TITLE: *V.P. Region 2*

DATE: *10-30-03*

FOR: *SPFPA  Local #165*

BY: *Guillermo Echeverria*

TITLE: *President of Local #165*

DATE: *10-30-03*

FOR: Akal Security, Inc.

BY: *[signature]*

TITLE: *(Director) H.R.*

DATE: *10-30-03.*

3036508510

Oct 28 04 12:04p        UGSOA

OCT-28-2004-THU 11:33 AM    AKAL HR        FAX No. 505 747 0382        P. 002/002

## LETTER OF UNDERSTANDING
## BETWEEN
## AKAL SECURITY, INC.
## AND THE
## UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA
## LOCAL #823

With this Letter of Understanding, the Akal Security, Inc. (hereafter referred to as the "Company") and United Government Security Officers of America, Local 823 (hereafter referred to as the "Union") adopt the collective bargaining agreement between the Company and Special Police and Fire Professionals of America, Local 823 dated 10/31/03.

The Parties agree that all references to the SPFPA, Local 823 in the document shall refer to the UGSOA, Local 823.

The Parties agree that effective 1/1/05 the H&W amount will be $3.40.

All other provisions, terms and conditions of the Agreement, except as provided herein, shall continue in full force and effect until 1/31/05 and may be extended by mutual agreement of the parties.

UNITED GOVERNMENT SECURITY
OFFICERS OF AMERICA, LOCAL #823

By: Director, UGSOA

Date: 10/28/04


AKAL SECURITY, INC.

By: Director, H.R

Date: 10/26/04

57 C

AKAL/Loera 0330

## AMENDMENT TO COLLECTIVE BARGAINING AGREEMENT
### BETWEEN
## AKAL SECURITY, INC.
### AND THE
## INTERNATIONAL UNION, SPECIAL POLICE AND FIRE PROFESSIONALS
### OF AMERICA, LOCAL 165

This Amendment to the Collective Bargaining Agreement between Akal Security, Inc. ("Company") and the International Union, Special Police and Fire Professionals of America, Local 165 ("Union") is entered into this 1st day of October, 2004, as an amendment to the Collective Bargaining Agreement between Akal Security, Inc. and International Union, Special Police and Fire Professionals of America, Local 165 in effect form October 31, 2004 till December 30, 2006.

Beginning January 1, 2005, the Health and Welfare Allowance will be $3.40.

All other provisions, terms and conditions of the Agreement, except as provided herein, shall continue in full force and effect unless otherwise mutually agreed upon.


International Union, SFFPA                          AKAL SECURITY, INC.
Andri's Local 165

_(signature)_                                      _(signature)_

Title: V.P. Region 7                               Title: Director, HR
       SFFPA

Date: 10/28/04                                     Date: 10/28/04

58C

AKAL/Loera 0331

January 20, 2004

On January 15, 2004 Akal Security and SPFPA local 165 met for the purposes of negotiating a change in the scheduling method used at El Centro. Currently there are fifty employees with permanent shifts and days off and the remainder of the bargaining unit is on rotating days off and shifts.

The company proposed the change for the following reasons.

1. Scheduling would be simplified and result in fewer scheduling mistakes and less overtime caused by these mistakes.
2. With the new bid system for vacations, officers would know when their days off would be and be better able to schedule vacations in conjunction with their days off.
3. This would result in the company being to identify the exact number of officers needed to cover training and vacation time, and would result in 10 to 15 more part time officers being hired full time, with full time benefits. It would also result in five to six more Saturday/Sunday sets of days off, as training would be conducted Monday through Friday.
4. Training could be scheduled a year in advance, and officers would know their training schedule well in advance.
5. There would be far fewer instances of officers not showing up for a shift that had been rescheduled after the initial schedule was published and result in fewer no call-no shows.
6. Permanent scheduling would allow the company to use a post relief to cover for call offs and other absences, and if no call offs to give an extra person a day off or half day off if requested.
7. This method of scheduling would make the tracking of payroll much easier and result in fewer payroll errors.

The implementation of the use of the maximum number of permanent shifts and days off would be accomplished in the following manner.

First Akal Security would identify all available permanent shifts and days off and chart them on a schedule.

All full time officers would be called in and allowed to bid by seniority for any available days off. Once bid the shift and days off are locked in. Officers will bid in order of seniority. This bid process would take one to two weeks to accomplish.

On the first pay period following the completion of the bid process the new shifts and days off would be implemented.

Those officers not successful in obtaining a bid would be known as floaters and would not have permanent days off or shifts. These officers will be used to cover for vacations

1

59 C

AKAL/Loera 0332

and sick personal days. While full time, they would serve on different shifts as the need arises.

The attached bid procedure would be utilized whenever a full time employee leaves and creates an opening on a shift.

In addition to scheduling the company agreed to a policy for trading of days off and shifts in order to accommodate employees who have occasional needs or are trying to attend higher education. That policy is attached to this correspondence.

There will be a (90-day) review to discuss proposed adjustments concerning scheduling procedures.

The above procedure is agreed to and accepted by:

_____          _2/6/04_____
Joaquin Reclosado-Project Manager          Date

_____          _2/6/04_____
Guillermo Echeverria- President Local 165          Date

6❍C

AKAL/Loera 0333

## Shift and Day Off Bid Procedure

### 01/20/04

Whenever management determines that an opening exists on a particular shift, it will be posted. The opening will be assigned an individual bid number, and will be posted in plain view on the union bulletin board and in the Akal office.

The posting notice will contain pertinent information concerning the opening, i.e. bid number, shift, days off and ending date and time. All bids will be posted for seven days. No bids will be accepted after the ending date and time.

Any officer may submit a completed bid form whenever a bid is posted.

The official Bid Request Form will consist of two sections, Part A and Part B.
   **Part A:** Bid Request
   Must have officers name, anniversary date, official bid number, shift and days off, officer's signature and supervisors initials.
   **Part B:** Bid receipt
   Must have officer's name, anniversary date, official Bid number, shift and days off, and supervisor's signature.

Only the official bid request form presented in person will be accepted. Both sections of the official bid form must be completed. Completed forms must be submitted to the shift supervisor prior to the ending date and time on the posting. The shift supervisor will sign part B and initial part A of the official bid request form and return part B to the officer as a receipt of the bid. The shift supervisor will place part A in with all other bids for that posting.

The shift supervisor will accept bids only if presented in person by the officer submitting the bid, with the exception of the Absentee Bid Authorization Form.

Once an officer places a bid it cannot be removed.

At the conclusion of the seven days the Bid will be closed. Bids will then be sorted by number and the officer's seniority date. The bids will then be awarded to the senior officer who submitted a bid. Management will then post the award in plain sight for all officers to see.

For postings with multiple bids officers must state first choice, second choice, etc.

There are two types of bids:
Shift (changing shift to shift regardless of days off)
Lateral (changing days off on the same shift)

1

61 C

AKAL/Loera 0334

### Absentee Bids

If an officer is going on leave and anticipates they will not be present for a bid they want, it will be the responsibility of the officer to contact their shift supervisor and obtain an Absentee Authorization form. This form must be submitted to the shift supervisor prior to departure on leave.

### Protests

Officers who feel that they have a protest to any bid award may protest the award only if they submitted a bid for the bid awarded. Protests may be filed within seven days of the awarding of the bid, protests after seven days will not be accepted.

The above procedure is agreed to and accepted by:

_____          2/6/04
Joaquin Reclosado-Project Manager          Date

_____          2/6/04
Guillermo Echeverria- President Local 165          Date

2

62 C

AKAL/Loera 0335

## Trade of Workdays and Shifts

Employees shall be permitted to make trades of workdays and shifts with other employees, provided that each employee is qualified to perform the duties, and provided that the trade will not cause Akal Security to pay overtime or other compensation greater than it would be required to pay if the trade were not made. The Project Manager must approve all trades in writing.

(Note: The federal and state law require that any employee who works over forty hours in a given week must be paid overtime, therefore the trade must be in the same work week.)

The following rules will apply to all **long term** trades.

1.   Both officers wishing to trade must sign a form agreeing to the trade and indicating which days each will work.
2.   No more than eight trades involving sixteen officers will be allowed at any one time.
3.   Trading between shifts cannot cause either officer to have less than (8) eight hours rest between shifts nor work more than (12) twelve hours in any twenty-four hour period.
4.   Trading of days off and shift may be approved for up to ninety days at one time in order to accommodate employees having family emergencies or attending institutions of higher learning. This may be renewed for an additional ninety days only if no one else has requested a trade and the maximum number of trades has not been exceeded.
5.   Trades are only considered approved when both officers receive a notice of approval from the project Manager.

In the event one of the parties in a trade does not fulfill their obligation and work on the days agreed upon, that person will be disciplined accordingly and will not be allowed to trade for a period of ninety (90) days for the first offense and 12 months for any subsequent offenses.

The above procedure is agreed to and accepted by:

_____    2/6/04
Joaquin Reclosado- Project Manager    Date

_____    2/6/04
Guillermo Echeverria- President Local 165    Date

1

63C

AKAL/Loera 0336

JASON R. THORNTON, SBN 185637
BERNARD F. KING III, SBN 232518

**MARKS, GOLIA & FINCH, LLP**
ATTORNEYS AT LAW
3900 HARNEY STREET – FIRST FLOOR
SAN DIEGO, CALIFORNIA 92110-2825
TELEPHONE: (619) 293-7000
FACSIMILE: (619) 293-7362

MATTHEW B. BUTLER, SBN 201781

**NICHOLAS & BUTLER, LLP**
225 BROADWAY, 19TH FLOOR
SAN DIEGO, CALIFORNIA 92101-5005
TELEPHONE: (619) 325-0492
FACSIMILE: (619) 325-0496

Attorneys for Plaintiff David Loera

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF IMPERIAL**

| | |
|---|---|
| DAVID LOERA, for himself and on behalf of all others similarly situated and the general public,<br><br>    Plaintiffs,<br><br>v.<br><br>AKAL SECURITY, INC., a corporation; And DOES 1-100, inclusive,<br><br>    Defendants. | CASE NO: ECU03022<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>(1)  FAILURE TO PAY MEAL PERIOD PREMIUM PAY;<br>(2)  FAILURE TO PAY REST BREAK PREMIUM PAY;<br>(3)  VIOLATIONS OF THE UCL; AND<br>(4)  PENALTIES UNDER CALIFORNIA LABOR CODE SECTION 2699<br><br>[PLAINTIFF DEMANDS TRIAL BY JURY]<br><br>Assigned to:<br>Hon. Christopher W. Yeager, Dept. 1<br><br>Complaint Filed:    April 27, 2006<br>Trial Date:    Not Set |

/ / / / /

/ / / / /

/ / / / /

# VIA FAX

FIRST AMENDED COMPLAINT

64 0

INTRODUCTION

The public policy of California declares:

> It is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of [workers] compensation, and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

(Labor Code, § 90.5 subd. (a).)

Despite this clear mandate, this case involves blatant, egregious and flagrant violations of the California Labor Code and the Industrial Welfare Commission ("IWC") Wage Orders by the defendant.

GENERAL ALLEGATIONS

1.     Venue is proper in this court because the events and contracts described below occurred and were executed exclusively within this judicial district.

2.     Plaintiff David Loera ("Plaintiff") is, and at all times mentioned was, an individual residing and working in the State of California.

3.     Plaintiff is informed and believes defendant Akal Security, Inc. ("Akal") is, and at all times mentioned was, a corporation organized and existing under and by virtue of the laws of the State of New Mexico, and doing business in the County of Imperial, State of California.

4.     Plaintiff does not know the true names and capacities of defendants sued as DOES 1 through 100, inclusive, and therefore sue them by fictitious names.  Plaintiff is informed and believes DOES 1 through 100, inclusive, are in some way responsible for the events and Plaintiff's damages described in this complaint.  Plaintiff will seek leave to amend this complaint when the true names and capacities of these defendants have been ascertained.

/ / / / /

/ / / / /

/ / / / /

2

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

FIRST AMENDED COMPLAINT

65 D

JURISDICTION

5.      This Court has jurisdiction over this action for damages, restitution, injunctive relief and penalties pursuant to, among other provisions, California Labor Code sections 226.7 and 512, and sections 17203 and 17205 of the UCL (California Business & Professions Code sections 17203 and 17205).

CLASS ALLEGATIONS

6.      Plaintiff's causes of action are brought and may properly be maintained as a class action pursuant to the provisions of California Code of Civil Procedure section 382. Plaintiff brings this action on behalf of himself and all members of the Class ("the Class"). The Class that Plaintiff represents is defined as follows:  all current and former prison guards who worked for Akal, at the Department of Homeland Security Immigration Detention Center in Imperial County, during the period April 15, 2002 to the present (the "Class Period"). Plaintiff brings no claims under federal law.  On information and belief, more than two-thirds (2/3) of the Class members are, when this action was filed and continuing to date, residents of the state of California, and, at the very least, more than one-third (1/3) of the Class members are residents of the State of California.

7.      The members of the Class for whose benefit the action is brought are so numerous that joinder of all Class members is impracticable.  Plaintiff believes that there are over three hundred members of the Class, although the exact number of individual Class members is presently unknown, and can only be ascertained through appropriate discovery. The identities of all Class members can be readily ascertained by reference to Akal's records.

8.      There are questions of fact and law common to the Class that predominate over any questions affecting only individual Class members.

9.      Among the questions of fact common to the Class are the following:

        a.      whether Class members were compelled to work for periods of five or
                more consecutive hours without having at least a one half hour break for
                meals and without receiving the required premium pay;

3

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

FIRST AMENDED COMPLAINT

66 D

b.    whether Class members were compelled to work for periods of four or
more consecutive hours without having at least a one ten minute rest
period and without receiving the required premium pay; and

c.    whether Akal has failed to keep proper records for the Class members
working hours.

10.    Plaintiff's claims are typical of the claims of Class members, because Plaintiff
and each member of the Class worked for Akal without being provided with the required meal
periods and rest breaks as mandated by California law, and were subjected uniformly to other
unlawful conduct by Akal.

11.    Plaintiff is committed to the vigorous prosecution of this action. Plaintiff has no
unique claims, has no conflict of interest with other Class members and has retained competent
counsel experienced in the prosecution of Class actions. Accordingly, Plaintiff is an adequate
representative of the Class and will fairly and adequately protect the interests of the Class.

12.    A Class action is superior to other available methods for the fair and efficient
adjudication of the controversy. In light of the amount of damage suffered by individual Class
members, individual actions by Class members are impracticable and a Class action is the only
practicable method by which the Class members can achieve redress from Akal and prevent
Akal from retaining millions of dollars of its ill-gotten gains. Individual actions would present
a risk of inconsistent adjudications, even though each Class member has an effectively
identical claim of right against Akal. Because the Class claims can be proven almost entirely
through Akal's own documents and witnesses, this case entails no circumstances which will
make it difficult to manage as a Class action. Individual damages may be calculated from the
information maintained in Akal's records, so that the cost of administering any recovery can be
minimized.

/ / / / /

/ / / / /

/ / / / /

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

4

FIRST AMENDED COMPLAINT

*670*

13.    This action may also be maintained as a class action because:

    a.    the prosecution of separate actions by or against individual members of the class would create a risk of:

        i.    inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

        ii.    adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

    b.    the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

14.    Plaintiff and Class members work or have worked as prison guards for Akal during the Class Period, at the Department of Homeland Security Immigration Detention Center in El Centro, California.

15.    During the past four years, Plaintiff and Class members were required by Akal to work for continuous periods of five hours or greater without having at least a one-half hour meal break. Despite having denied Plaintiff and Class members of these meal breaks, Akal failed to compensate the Plaintiff and Class members with the requisite premium pay as set forth in the California Labor Code.

16.    During the past four years, Plaintiff and Class members were required by Akal to work for continuous periods of four hours or greater without having at least a ten minute rest period. Despite having denied Plaintiff and Class members of these rest periods, Akal failed to

/ / / / /

5

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

FIRST AMENDED COMPLAINT

1    compensate the Plaintiff and Class members with the requisite premium pay as set forth in the

2    California Labor Code.

3         17.    During the past four years, Plaintiff is informed and believes Akal failed to

4    provide Plaintiff and Class members with accurate wage deduction statements showing the

5    actual hours worked by Plaintiff and Class members.

FIRST CAUSE OF ACTION

7                     (Failure to Pay Meal Period Premium Pay –
8         On behalf of Plaintiff and Class Members Against Akal and DOES 1 through 100)

9         18.    Plaintiff incorporates by reference each and every allegation contained in

10   Paragraphs 1 through 17 above.

11        19.    California law requires an employer to pay an additional one hour of

12   compensation for each meal period the employer fails to provide.  Employees are entitled to an

13   uninterrupted meal period, during which employees are relieved of all duties, of at least thirty

14   minutes for each five-hour work period.  Plaintiff and Class members have consistently worked

15   over five hours in a workday without a meal period.

16        20.    Defendant failed to provide Plaintiff and Class members with timely meal

17   breaks of not less than thirty minutes for each five-hour period worked as required by

18   California law.

19        21.    Plaintiff and Class members are entitled to recover an amount equal to one hour

20   of wages per missed meal break, interest, applicable penalties, attorneys' fees and costs.

SECOND CAUSE OF ACTION

22                     (Failure to Pay Rest Break Premium Pay –
23        On behalf of Plaintiff and Class Members Against Akal and DOES 1 through 100)

24        22.    Plaintiff incorporates by reference each and every allegation contained in

25   Paragraphs 1 through 21 above.

26        23.    California law requires an employer to pay an additional one hour of

27   compensation for each rest period the employer fails to provide.  Employees are entitled to a

28                                          6

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

FIRST AMENDED COMPLAINT

69 D

1  paid ten minute rest break for every four hour period worked.  Plaintiff and Class members

2  have consistently worked over four hour periods per day with no rest breaks.

3      24.    Plaintiff and Class members are entitled to recover an amount equal to one hour

4  of wages per missed rest break, interest, applicable penalties, attorneys' fees and costs.

5  THIRD CAUSE OF ACTION

6  (Violations of the UCL – On behalf of Plaintiff and Class Members
7  Against Akal and DOES 1 through 100)

8      25.    Plaintiff incorporates each and every allegation contained in Paragraphs 1

9  through 24 above.

10      26.    The UCL prohibits business practices which are "unlawful."

11      27.    Akal has committed, and upon information and belief continues to commit,

12  ongoing unlawful business practices within the meaning of the UCL, including, but not limited

13  to:

14      a.    Compelling Plaintiff and Class members to work for periods of five or

15  more consecutive hours without having at least a one half hour break for meals;

16      b.    Compelling Plaintiff and Class members to work for periods of four or

17  more consecutive hours without having at least a one ten minute rest period;

18      c.    Failing to post required notices at the workplace;

19      d.    Failing to provide accurate and itemized wage statements required under

20      California law; and

21      e.    Failing to prepare and maintain all records required under California

22      law.

23      28.    The unlawful business practices described above have proximately caused

24  monetary damages to Plaintiff and Class Members and to the general public.

25      29.    Pursuant to the UCL, Plaintiff and Class members are entitled to restitution of

26  money or property acquired by Akal by means of such unlawful business practices, in amounts

27  not yet known, but to be ascertained at trial.

28

7

MARKS, GOLIA &
FINCH, LLP
3800 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

FIRST AMENDED COMPLAINT

70 D

39.    On April 7, 2006, counsel for Plaintiff sent letters to the California Labor and Workforce Development Agency and Akal pursuant to California Labor Code section 2699.3.

40.    Counsel for Plaintiff has received written notice from the California Labor and Workforce Development Agency stating that it does not intend to investigate the violations set forth in the April 15, 2005 letter.  Pursuant to California Labor Code section 2699.3, subdivision (a)(2)(A), Plaintiff is entitled to commence this action for penalties.

41.    As a result of the acts alleged above, Plaintiff seeks penalties under California Labor Code section 2699 because of Akal's violation of numerous provisions of the California Labor Code.

42.    Pursuant to California Labor Code section 2699, Plaintiff is entitled to be awarded twenty-five (25 %) percent of all penalties due under California law, in addition to interest, attorneys' fees and costs.

43.    The Court should award seventy-five (75 %) percent of the penalties due under California law to the State of California.

<u>PRAYER</u>

WHEREFORE, Plaintiff and the Class members pray for judgment against Akal, as follows:

<u>FOR THE FIRST CAUSE OF ACTION:</u>

1.    For an order certifying the case and appointing Plaintiff and his counsel to represent the Class;

2.    For compensatory damages according to proof;

3.    For enhanced damages and penalties as permitted under California law;

4.    For pre-judgment interest;

5.    For costs of suit; and

6.    For reasonable attorneys' fees.

/ / / / /

9

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

FIRST AMENDED COMPLAINT

710

30.     Pursuant to the UCL, Plaintiff, Class members and the general public are entitled to injunctive relief against Akal's ongoing continuation of such unlawful business practices.

31.     If an injunction does not issue enjoining Akal from engaging in the unlawful business practices described above, Plaintiff and Class Members and the general public will be irreparably injured, the exact extent, nature and amount of such injury being impossible to ascertain.

32.     Plaintiffs have no plain, speedy, and adequate remedy at law.

33.     Akal, if not enjoined by this Court, will continue to engage in the unlawful business practices described above in violation of the UCL, in derogation of the rights of Plaintiff and Class Members and of the general public.

34.     Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.

35.     Private enforcement of these rights is necessary as no public agency has pursued their enforcement. There is a financial burden incurred in pursuing this action, and it would be against the interests of justice to require the payment of attorneys' fees from any recovery in this action.

36.     Plaintiff and Class members are therefore entitled to an award of attorneys' fees and costs of suit pursuant to California Code of Civil Procedure section 1021.5.

<u>FOURTH CAUSE OF ACTION</u>

(Penalties Under California Labor Code Section 2699 – On behalf of Plaintiff and Class Members Against Akal and DOES 1 through 100)

37.     Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 36 above.

38.     On April 7, 2006, counsel for Plaintiff sent letters to the California Labor and Workforce Development Agency and Akal pursuant to California Labor Code section 2699.3.

/ / / / /

MARKS, GOLIA &
FINCH, LLP
3900 Harney Street
First Floor
San Diego  CA 92110
(619) 293-7000

8

FIRST AMENDED COMPLAINT

72 0

STEPHEN E. RONK (SBN: 164333)
JOSHUA B. WAGNER (SBN: 199570)
MOLLIE BURKS-THOMAS (SBN: 222112)
GORDON & REES LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

Attorneys for Defendant
AKAL SECURITY, INC.

ENDORSED

JUL 28 2006

SUPERIOR COURT
IMPERIAL COUNTY
JOSE O. GUILLEN, CLERK
BY MARIA MENESES
DEPUTY

### SUPERIOR COURT OF CALIFORNIA - COUNTY OF IMPERIAL

| | |
|---|---|
| DAVID LOERA, for himself and on behalf of all others similarly situated and the general public <br><br> Plaintiffs, <br><br> v. <br><br> AKAL SECURITY, INC., a corporation; and DOES 1-100, inclusive <br><br> Defendants. | CASE NO. ECU03022 <br><br> *[Assigned to Hon. Christopher W. Yeager, Dept. 1]* <br><br> **DEFENDANT AKAL SECURITY, INC.'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT** <br><br> Complaint Filed:  April 27, 2006 <br> Trial Date:  Not Set |

Defendant AKAL SECURITY, INC., a New Mexico corporation, ("Defendant"), for itself alone and for no other defendants, answers the Complaint for Damages as follows:

1.    Pursuant to Code of Civil Procedure section 431.30(d), Defendant denies generally and specifically each and every allegation contained in the Complaint, and further denies that Plaintiff has been damaged in the amount or amounts alleged therein, or in any other amount, or at all.

/ / /

/ / /

/ / /

/ / /

73D

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

## AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE

2.     For a first, separate and affirmative defense, Defendant alleges that the Complaint, and each and every purported cause of action contained therein, fails to state facts sufficient to constitute a cause of action against this Defendant.

### SECOND AFFIRMATIVE DEFENSE

3.     For a second, separate and affirmative defense, Defendant alleges that the federal court has exclusive jurisdiction over all of the claims asserted by Plaintiff, due to the fact that all of the conduct alleged in the Complaint occurred on a federal enclave pursuant to *article I, section 8, clause 17 of the United States Constitution.*

### THIRD AFFIRMATIVE DEFENSE

4.     For a third, separate and affirmative defense, Defendant alleges that the land upon which all of the claims asserted by Plaintiff purportedly occurred is land over which the federal government exercises legislative jurisdiction, and to which the laws of the State of California do not apply.

### FOURTH AFFIRMATIVE DEFENSE

5.     For a fourth, separate and affirmative defense, Defendant is informed and believes that any recovery on Plaintiff's Complaint, or on each purported cause of action alleged therein, is barred by California Labor Code sections 2854 and 2856 in that Plaintiff failed to use ordinary care and diligence in the performance of his duties and failed to comply substantially with the reasonable directions of their employer.

### FIFTH AFFIRMATIVE DEFENSE

6.     For a fifth, separate and affirmative defense, Defendant alleges that Plaintiff's claims are barred, in whole or in part, because they failed to exhaust their administrative remedies under any applicable Collective Bargaining Agreement or California Labor Code sections 98-98.2,  or to the extent that Plaintiff is exempt from the overtime provisions of the California Labor Code and/or the applicable wage orders of the California Industrial Welfare Commission.

**74D**

-2-

## SIXTH AFFIRMATIVE DEFENSE

7.    For a sixth, separate and affirmative defense, Defendant alleges that it has engaged attorneys to represent it in defense of Plaintiff's unfounded and unreasonable action and Defendant thereby is entitled to an award of its reasonable attorney's fees and costs upon judgment thereon in its favor.

## SEVENTH AFFIRMATIVE DEFENSE

8.    For a seventh, separate and affirmative defense, Defendant alleges that any recovery on Plaintiff's Complaint, or any cause of action alleged therein, is barred because Plaintiff's did not have a good faith belief or reasonably based suspicion that Defendant was in violation of any law, including, but not limited to, the California Labor Code.

## EIGHTH AFFIRMATIVE DEFENSE

9.    For an eighth, separate and affirmative defense, Defendant alleges that any and all acts, conduct or statements by and/or attributed to it were justified, undertaken in good faith and/or privileged.

## NINTH AFFIRMATIVE DEFENSE

10.    For a ninth, separate and affirmative defense, Defendant alleges that it made Plaintiff aware of his right to and encouraged Plaintiff to take meals and/or rest periods and accordingly are not liable if Plaintiff failed to take such meal and/or rest periods.

## TENTH AFFIRMATIVE DEFENSE

11.    For a tenth, separate and affirmative defense, Defendant alleges that any alleged emotional, mental and/or physical injury suffered by Plaintiff was proximately caused in whole or in part by the acts and/or omissions of persons and entities other than Defendant, including the acts and omissions of Plaintiff himself.

## ELEVENTH AFFIRMATIVE DEFENSE

12.    For an eleventh, separate and affirmative defense, Defendant alleges that any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred because the alleged damages were not proximately caused by any conduct of Defendant as alleged or otherwise.

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

-3-

75D

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

**TWELFTH AFFIRMATIVE DEFENSE**

13.    For a twelfth, separate and affirmative defense, Defendant alleges that any damages otherwise recoverable by Plaintiff are barred and/or limited by Plaintiff's failure to exercise reasonable diligence in attempting to mitigate his alleged damages.

**THIRTEENTH AFFIRMATIVE DEFENSE**

14.    For a thirteenth, separate and affirmative defense, Defendant alleges that it is entitled to a setoff for amounts Plaintiff owes Defendant for receipt of any wages and other benefits to which he were not entitled and/or did not earn.

**FOURTEENTH AFFIRMATIVE DEFENSE**

15.    For a fourteenth, separate and affirmative defense, Defendant alleges that Plaintiff's claims are barred in whole or in part by the applicable statute of limitations, including, *inter alia*, section 335.1 and 340 of the California Code of Civil Procedure.

**FIFTEENTH AFFIRMATIVE DEFENSE**

16.    For a fifteenth, separate and affirmative defense, Defendant alleges that Plaintiff's employer maintained policies prohibiting discrimination and retaliation and had in place an effective complaint procedure. Had Plaintiff made proper use of that procedure and had he complied with those policies, he could have avoided all or part of the damages claimed in this action. Accordingly, Plaintiff's claims are barred in whole or in part by the doctrine of avoidable consequences.

**SIXTEENTH AFFIRMATIVE DEFENSE**

17.    For a sixteenth, separate and affirmative defense, Defendant alleges that Plaintiff's claims are barred by his failure to timely and properly exhaust the administrative remedy set forth in the Collective Bargaining Agreement.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

18.    For a seventeenth, separate and affirmative defense, Defendant alleges that Plaintiff's claims are barred, in whole or in part, because, based on the hours he worked, Plaintiff is not entitled to overtime compensation and/or meal and rest period penalties under the California Labor Code and/or the applicable wage orders of the California Industrial Welfare

-4-

760

1 Commission. Defendant's conduct was not willful.

## EIGHTEENTH AFFIRMATIVE DEFENSE

3      19.    For an eighteenth, separate and affirmative defense, Defendant alleges that
4 Plaintiff's Complaint, and each purported cause of action therein, is barred by the doctrines of
5 laches, estoppel, waiver and unclean hands.

## NINETEENTH AFFIRMATIVE DEFENSE

7      20.    For an nineteenth, separate and affirmative defense, Defendant alleges that
8 accommodating plaintiff would have been an undue hardship by presenting a significant
9 difficulty or expense.

## TWENTIETH AFFIRMATIVE DEFENSE

11     21.    For a twentieth, separate and affirmative defense, Defendant alleges that any
12 recovery on Plaintiff's Complaint, or any cause of action alleged therein, is barred because
13 Plaintiff failed to act in good faith towards and deal fairly with Defendant. The resulting injuries
14 and damages, if any, sustained by Plaintiff was proximately caused by and attributed to
15 Plaintiff's bad faith and misconduct in dealing with Defendant and its employees and authorized
16 agent in their participation in the events alleged therein.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

18     22.    For a twenty-first, separate and affirmative defense, Defendant is informed and
19 believes that Plaintiff is barred from pursuing these claims in court because they are subject to
20 mandatory and final binding arbitration.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

22     23.    For a twenty-second, separate and affirmative defense, Defendant alleges that the
23 cause of action for alleged unfair business practices under California Business and Professions
24 Code section 17200 et seq., and the equitable remedies therein sought, are barred in light of the
25 fact that Plaintiff has an adequate remedy at law.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

27     24.    For a twenty-third, separate and affirmative defense, Defendant alleges that the
28 cause of action for alleged unfair business practices under California Business and Professions

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

1   Code section 17200 et seq., and the equitable remedies therein sought, are barred in light of the

2   fact that the plaintiff has not suffered, and will not suffer, irreparable harm.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

4        25.    For a twenty-fourth, separate and affirmative defense, Defendant alleges that

5   Plaintiff does not have standing to bring the cause of action for alleged unfair business practices

6   under California Business and Professions Code section 17200 et seq.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

8        26.    For a twenty-fifth, separate and affirmative defense, Defendant alleges that its

9   business practices are not unfair within the meaning of Business and Professions Code, section

10  17200.  The utility of any such practice outweighs any potential harm.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

12       27.    For a twenty-sixth, separate and affirmative defense, Defendant alleges that this

13  action does not and cannot qualify for certification as a class action based upon applicable law,

14  and the Plaintiff is not proper or appropriate class representatives.  Also, Plaintiff lacks standing

15  to sue on behalf of the representative class under applicable law.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

17       28.    Defendant alleges that because Plaintiff's Complaint is couched in conclusory

18  terms, Defendant reserves its right to amend or add additional affirmative defenses as they

19  become known.

20       **WHEREFORE**, Defendant prays for the following relief:

21       1.    That Plaintiff take nothing by reason of his Complaint and that this action be

22  dismissed in its entirety and with prejudice;

23       2.    That judgment be entered in favor of Defendant, on all causes of action;

24       3.    That Defendant recover its costs of suit incurred herein as well as attorneys' fees

25  to the extent permitted by law; and

26  / / /

27  / / /

28  / / /

78D

1        4.    That Defendant be awarded such other and further relief as the Court may deem

2    just and proper.

3

Dated: July 27, 2006                              GORDON & REES LLP

4

5

                                                  By: _____

6                                                      Stephen E. Ronk
                                                       Joshua B. Wagner
7                                                      Mollie Burks-Thomas
                                                  Attorneys for Defendant
8                                                 AKAL SECURITY, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

AKAL\1039887\96379.1

-7-

79 D

DEFENDANT AKAL SECURITY, INC.'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

1

PROOF OF SERVICE

2          I am a resident of the State of California, over the age of eighteen years, and not a party
to the within action. My business address is: 633 West Fifth Street, Suite 4900, Los Angeles,
3    CA 90071. On July 28, 2006, I served the within documents:

4    **DEFENDANT AKAL SECURITY, INC.'S ANSWER TO PLAINTIFF'S**
     **UNVERIFIED COMPLAINT**

5

6    ☐  by transmitting via facsimile the document(s) listed above to the fax number(s) set
        forth below on this date before 5:00 p.m.

7    ☒  by placing the document(s) listed above in a sealed envelope with postage thereon
        fully prepaid, in United States mail in the State of California at Los Angeles,
8       addressed as set forth below.

9    ☐  by personally delivering the document(s) listed above to the person(s) at the
        address(es) set forth below.

10       Jason R. Thornton, Esq.
         Bernard F. King III, Esq.
11       Marks, Golia & Finch, LLP
12       3900 Harney Street, First Floor
         San Diego, CA 92110-2825
13
         Matthew B. Butler, Esq.
14       Nicholas & Butler, LLP
         225 Broadway, 19th Floor
15       San Diego, CA 92101-5005

16

17       I am readily familiar with the firm's practice of collection and processing correspondence
for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
18   day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
19   meter date is more than one day after the date of deposit for mailing in affidavit.

20       I declare under penalty of perjury under the laws of the State of California that the above
is true and correct.

21

         Executed on July 28, 2006, at Los Angeles, California.
22

23

24                                        Sandy Halvorsen
25                                        Sandy Halvorsen

26

27

28

STEPHEN J. SCHULTZ, SBN 90187
JASON R. THORNTON, SBN 185637
BERNARD F. KING III, SBN 232518

**MARKS, GOLIA & FINCH, LLP**
ATTORNEYS AT LAW
3900 HARNEY STREET – FIRST FLOOR
SAN DIEGO, CALIFORNIA 92110-2825
TELEPHONE: (619) 293-7000
FACSIMILE: (619) 293-7362

MATTHEW B. BUTLER, SBN 201781

**NICHOLAS & BUTLER, LLP**
225 BROADWAY, 19ᵀᴴ FLOOR
SAN DIEGO, CALIFORNIA 92101-5005
TELEPHONE: (619) 325-0492
FACSIMILE: (619) 325-0496

Attorneys for Plaintiff David Loera

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF IMPERIAL

| | |
|---|---|
| DAVID LOERA, for himself and on behalf of all other similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>AKAL SECURITY, INC., a corporation; And DOES 1-100, inclusive,<br><br>        Defendants. | CASE NO: ECU03022<br><br>NOTICE OF PLAINTIFF'S MOTION TO COMPEL<br><br>Assigned to:<br>Hon. Christopher W. Yeager, Dept. 7<br><br>Date:       May 7, 2007<br>Time:       8:30 a.m.<br>Dept.:      7<br><br>Complaint Filed:      April 27, 2006<br>Trial Date:            Not Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on May 7, 2007, 2007, at 8:30 p.m., or as soon thereafter as the matter may be heard, in Department 7 of the above-entitled Court, located at 939 West Main Street, El Centro, California, plaintiff David Loera will, and hereby does, apply to this Court for an order compelling further responses to the discovery requests served on defendant Akal Security, Inc. ("Akal"). Specifically, plaintiff requests that Akal be ordered to: (1) provide further responses without objections to plaintiff's inspection demands numbers 1-

NOTICE OF PLAINTIFF'S MOTION TO COMPEL

81 D

1  10, 38-40, 42, 44-46; (2) provide further responses without objections to plaintiff's special

2  interrogatories numbers 1-27, 40-47; 50-51; (3) provide all employees, Class members and

3  other third parties on whose behalf Akal raises a privacy objection, with an "opt-out" notice as

4  discussed in *Pioneer Electronics (USA), Inc., v. Superior Court* (2007) 40 Cal.4th 360; and (4)

5  pay monetary sanctions in the amount of $2,100.

6      Plaintiff's application is made pursuant to the Civil Discovery Act codified at Code of

7  Civil Procedure section 2016.010, et seq., and the departmental policies and procedures of this

8  court.  The requested order is appropriate and necessary, and good cause exists for it, in that

9  after numerous attempts to resolve the issue informally, Akal has failed to respond to

10  plaintiff's discovery and plaintiff thus is entitled to bring a motion to compel further responses

11  from Akal.

12      This motion is based upon the attached memorandum of points and authorities; the

13  declaration of Bernard F. King III and the exhibits attached thereto, the concurrently filed

14  separate statement of requests and responses, the pleadings and records on file in this action,

15  and upon such oral and other documentary evidence as may be presented at the time of

16  hearing.

17  DATED:  April 11, 2007

Respectfully submitted,

18  MARKS, GOLIA & FINCH, LLP

20  By:

STEPHEN J. SCHULTZ
JASON R. THORNTON
BERNARD F. KING III
Attorneys for Plaintiff David Loera

27  974.002/BK629.am

28  2

MARKS, GOLIA & FINCH, LLP
3900 Harney Street
First Floor
San Diego, CA 92110
(619) 293-7000

NOTICE OF PLAINTIFF'S MOTION TO COMPEL